OPINION OF THE COURT
Herbert Kramer, J.
A glass of water allegedly exploded in a patron’s hand in one of our local Brooklyn restaurants: Can recovery be had against the restaurant as the “seller” of this glass under theories of strict products liability and implied warranties of fitness?
This appears to be a question of first impression in this state. Intriguingly, this court was unable to find any decisions in this state where a party had even complained about the food in one of our thousands of restaurants, let alone the utensils. This undoubtedly speaks well for our local restauranteurs, but requires us to go beyond our boarders for juridical guidance.
Defendants Small Feast Caterers, the restaurant at which the plaintiff dined, and Stoelzle-Oberglas, USA, an importer/ distributor of items for restaurant tabletops including glasses, move for summary judgment pursuant to CPLR 3212 to dismiss the complaint and cross claims.
The complaint alleges three theories of recovery: express warranty, implied warranty and strict products liability. The restaurant argues that it is not liable for the harm caused by the allegedly defective glass because it was not and is not in the “business of selling” the water or the water glasses it provides to its patrons.
Although there are no New York cases directly on point, this court has found a decision in the United States District Court for the District of New Jersey that is legally and factually indistinguishable from our own. (Levondosky v Marina Assoc., 731 F Supp 1210 [D NJ 1990].) In Levondosky, a cocktail waitress in a gambling casino gave the plaintiff an alcoholic beverage free of charge while he was gambling. The plaintiff allegedly swallowed glass chips that had broken off the rim of the glass *211 and sued under theories of express and implied warranty and strict products liability. The Levondosky court, making its determination under New Jersey statutes identical to our own,[1] reasoned as follows: The theories of implied warranty and strict liability are essentially identical juridically. With respect to implied warranty[2] the question is whether a “sale” occurred since the alcoholic beverage, like the glass of water in our case, was provided free of charge and the statute requires a service “for value” of food or drink.
In Levondosky, as here, defendant was offering a complimentary drink to its patrons, but was not doing so out of any sense of charity or hospitality. This glass of water was offered as an indispensable part of the meal that was sold to the patron. Moreover, here, as in Levondosky, the defendant served water on a regular basis as part of its business. In fact it would be difficult to imagine, except in times of severe drought, a restaurant that did not provide water to its patrons along with their meals. As to the question of value, even if we were to give this term a very restrictive meaning, it is reasonable to presume that the cost of providing this drink was built into the bill.
“The second inquiry is whether the defendant gave an implied warranty as to the glass as well as to the drink in it. [The plaintiff] was the ultimate consumer of the drink, but the glass remained the property of defendant. In Shaffer v. Victoria Station, Inc., 91 Wash.2d 295, 588 P.2d 233 (1978) the Supreme Court of Washington was faced with a similar situation. In that case plaintiff ordered a glass of wine and the glass broke in his hand causing permanent injury. The state of Washington adopted the identical provision from the Uniform Commercial Code regarding implied warranties as did the state of New Jersey.
“In the opinion of the Supreme Court of Washington, when the ‘Uniform Commercial Code states “the serving for value of food or drink to be consumed either on the premises or *212 elsewhere is a sale” and that such food and drink must be “adequately contained, packaged and labeled as the agreement may require,” it covers entirely the situation [when a glass causes injury] . . . The drink sold includes the wine and the container both of which must be fit for the ordinary purpose for which used.’ ” (Levondosky v Marina Assoc., supra, 731 F Supp at 1213.)
This court finds that the New York statute is identical to that of the Washington and New Jersey statutes and it adopts the Levondosky analysis, holding that the defendant restaurant impliedly warranted that the water it served to the plaintiff was fit for consumption. If the container that held the water was defective, then the water was not fit for consumption and consequently plaintiffs claim under the theory of implied warranty is viable.
As to the theory of strict liability in tort, this product is not merely an amenity, like slippers given to an airline passenger (Gobhai v KLM Royal Dutch Airlines, 85 AD2d 566 [1st Dept 1981]), but is an important component of the meal. As such, strict liability may be imposed upon the defendant (Sukljian v Ross & Son Co., 69 NY2d 89 [1986]). Because the defendant is not an occasioned provider of this product, but does so in the ordinary course of his business, the policy considerations underlying the imposition of strict liability obtain here and defendant restaurant “by reason of [its] continuing relationships with [the distributor is] ... in a position to exert pressure for the improved safety of [its products] and can recover increased costs within [its] commercial dealings, or through contribution or indemnification in litigation; additionally . . . [defendant] may be said to have assumed a special responsibility to the public, which has come to expect [it] to stand behind [its] goods.” (Sukljian v Ross & Son Co., supra, 69 NY2d at 95.)
The fact that it is the glass and not the drink that caused the harm is of no moment. “The defective condition may arise not only from harmful ingredients . . . but also . . . from the way in which the product is . . . packed. No reason is apparent for distinguishing between the product itself and the container in which it is supplied; and the two are purchased by the user or consumer as an integrated whole. Where the container is itself dangerous, the product is sold in a defective condition . . . The container cannot logically be separated from the contents when the two are sold as a unit, and the liability stated in this Section arises not only when the consumer drinks the beverage and is *213 poisoned by it, but also when he is injured by the bottle while he is handling it preparatory to consumption.” (Restatement [Second] of Torts § 402A,[3] Comment h; see also Shaffer v Victoria Sta., Inc., 91 Wash 2d 295, 588 P2d 233, supra [relying on this Comment and holding a restaurateur strictly liable to a patron whose wine glass broke in his hand].)
Accordingly, this court holds that plaintiff has a cause of action against the restaurant under a theory of strict liability.
Defendant distributor argues that its motion should be granted because plaintiff has failed to prove that it provided the glass in question and failed to establish the presence of any defect in the glass. As the movant, it is the defendant’s burden in the first instance to come forward with evidence that it did not distribute this product. (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].) Both the plaintiff and the distributor rely primarily upon the testimony of the restaurant’s bookkeeper in this regard.
The standards for demonstrating the identity of a manufacturer or distributor are well established: “The identity of the [distributor] of a defective product may be established by circumstantial evidence . . . Moreover, circumstantial evidence may sufficiently demonstrate the maker’s identity, notwithstanding the destruction of the allegedly defective product after use . . . The circumstantial evidence of identity of the [distributor] of a defective product causing injury must establish that it is reasonably probable, not merely possible or evenly balanced, that the defendant was the source of the offending product.” (Healey v Firestone Tire & Rubber Co., 87 NY2d 596, 601-602 [1996].)
Here, even if we find that the ambiguities in the bookkeeper’s testimony support the defendant’s contentions such that we deem that it has met its burden of going forward, plaintiff has demonstrated the existence of a triable issue of fact with this *214 testimony which renders it reasonably probable[4] 5that the defendant distributor provided this glass to the restaurant. However, since more than one conclusion could be drawn from the asserted facts, summary judgment is not appropriate and it becomes a question of fact for the trier of fact. (Speller v Sears, Roebuck & Co., 100 NY2d 38, 43 [2003].)
As to the alleged defects in the glass, the engineering report submitted by codefendant Small Feast Caterers that asserted that the breakage was caused by the application of an external force and thus presumably was not the result of a defect in the glass, satisfied the defendants’ burden.[5] Plaintiffs responding expert’s affidavit created a question of fact in that regard[6] and his own testimony as to the occurrence of the event placed the allegation of the application of external force in dispute. Where, as here, the product is no longer available for inspection “a plaintiff ‘is not required to prove the specific defect’ and . . . ‘[p]roof of necessary facts may be circumstantial.’ [All the plaintiff need prove is that] the product did not perform as intended and exclude all other causes for the product’s failure that are not attributable to defendants . . . Where [as here] causation is disputed, summary judgment is not appropriate unless ‘only one conclusion may be drawn from the established facts.’ ” (Speller v Sears, Roebuck & Co., supra, 100 NY2d at 41, 43.)
Finally, this court has searched the record and, with respect to the third cause of action alleging the breach of an express *215 warranty, there is no evidence on this record that any such warranty was created by “affirmation of fact or promise,” “description” or “sample or model . . . made part of the basis of the bargain.” (UCC 2-313 [1] [a], [b], [c].) Accordingly, the third cause of action is dismissed. (See also Levondosky v Marina Assoc., supra, 731 F Supp at 1212.)
In conclusion, the defendants’ motions for summary judgment are denied except with respect to the third cause of action alleging express warranty which cause of action is hereby dismissed.

. Compare NJ Stat Ann § 12A:2-314, with NY UCC 2-314 (implied warranty of merchantability usage in trade), and NJ Stat Ann § 12A:2-313 (express warranty), with NY UCC 2-313.

. “[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods of that kind. Under this section the serving for value of food or drink to be consumed ... on the premises . . . is a sale. Goods to be merchantable must be at least such as . . . are adequately contained . . . (NJ Stat Ann § 12A:2-314 [1], [2] [e], as quoted in Levondosky v Marina Assoc., 731 F Supp 1210, 1212 [1990], supra; see NY UCC 2-314 [using identical language].)

. Restatement (Second) of Torts § 402A recites as follows: “(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.”

. The bookkeeper did not recall seeing an invoice from another glass company or making a check out to another glass company in the six years she had worked at the restaurant. She said that glasses may have been purchased from other vendors during that period, but she did not have a specific recollection of that.

. Mr. Edwin Zucker, a professional engineer, examined glasses similar to the one in question. He opined that the stress induced in the glass by the water was 140 times less than the stress required to cause a critical crack in the glass. Mr. Zucker concluded with engineering certainty that the glass in question did not break spontaneously, but that an external force substantially greater than the approximately 0.7-pound force required to support the lifted glass was applied to the glass causing its breakage.

. Dr. Anderson stated that imperfections found in the glasses tested by Mr. Zucker could increase the likelihood of failure of a similar glass during routine use. Dr. Anderson also noted that had the glass been hot or recently extracted from a dishwasher, and ice water was poured into it soon thereafter, that it is well known that the formation of a crack could be delayed for some time and then could form with violent force. Plaintiff testified that the ice water was poured into the glass 10 minutes before exploding, a reasonable period of time according to Dr. Anderson.