■ KAREN LAWRENCE, Individually and as Executor of DANIEL W. SCOFIELD, Deceased, Appellant, v CAPITAL CARE MEDICAL GROUP, LLC, Respondents. [788 NYS2d 269]—

Mugglin, J. Appeal from a judgment of the Supreme Court (Caruso, J.), entered August 19, 2003 in Schenectady County, upon a verdict rendered in favor of defendants.

Following the rendering of the verdict in this medical mal-

practice action, plaintiff's motions to set it aside were denied. On this appeal, plaintiff asserts two arguments as the basis for reversal of Supreme Court's refusal to set aside the verdict.

With respect to the first of these two arguments, before a court may set aside a verdict unsupported by legally sufficient evidence and grant judgment as a matter of law, it must determine "that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *see McEachron v State Farm Ins. Co.*, 7 AD3d 929, 931 [2004]; *Cramer v Benedictine Hosp.*, 301 AD2d 924 [2003]). If there is legally sufficient evidence, the verdict may still be set aside if the court determines that the evidence so preponderated in favor of the losing party that it could not have been reached on any fair interpretation of it (*see Lolik v Big V Supermarkets*, 86 NY2d 744 [1995]; *Pinkowski v Fuller*, 5 AD3d 907, 909 [2004]; *Johnson v Grant*, 3 AD3d 720, 722 [2004]). Our review of the trial evidence, in light of these standards, results in an affirmance.

Defendant Eugene Haber (hereinafter defendant) began treating decedent on January 3, 1997. At that time, decedent complained of "plugged ears," some left neck and head pain and urinary problems. Defendant diagnosed decedent as suffering from arthritis in his cervical spine and prescribed medication to clear his ears, to treat his high blood pressure, and to treat his "prostate-related issues." At a follow-up appointment three weeks later, decedent complained of the same problems, explaining that the pain in his neck had started when he twisted it the previous month. Defendant ordered a CT scan to rule out a brain aneurysm. At decedent's next examination on February 27, 1997, he complained of occasional ear pain and headache, with some neck pain. Defendant diagnosed him as suffering from hypertension and cervical degenerative joint disease. Defendant prescribed pain medication and requested that decedent return in three months to check his blood pressure. Upon his return on May 27, 1997, decedent reported that he had suffered an episode of vertigo, saw flashing lights and had headaches similar to his previous headaches. Decedent also reported that he had not needed to use the pain medication prescribed in February 1997. Decedent remarked that Advil, hot packs and chiropractic care were alleviating his symptoms, causing defendant to reaffirm his working diagnosis that decedent was suffering from arthritis.

On August 21, 1997, when decedent returned for his follow-up

appointment, he reported that he still had "persistent left neck discomfort" and a "vague concern about cancer." Because of decedent's prior prostate problems, defendant ordered a test for prostate-specific antigens. Upon examination, defendant noted a slight swelling on the left side of decedent's neck, which defendant determined was a muscle spasm related to decedent's arthritis. At decedent's next appointment on October 24, 1997, he complained of increased arthritis pain and a knot on the left side of his neck. Decedent reported that in the interim he had seen an ear, nose and throat specialist who took an X ray of his neck and confirmed that he suffered from arthritis in his cervical spine. Defendant noted that the swelling on decedent's neck was "minimally bigger," opined that it was a "trigger point"— frequently found in patients with arthritis—and gave decedent an injection of pain killers, prescribed anti-inflammatory medication, and referred him for physical therapy. On November 5, 1997, decedent was scheduled for a complete physical exam when he again reported persistent neck pain that was "better with hot packs" and physical therapy. Noting that decedent had discontinued the use of the prescription pain medication, defendant continued the medication to treat decedent's high blood pressure, increased the dosage of the anti-inflammatory medication and continued his referral to the physical therapy clinic. As requested, decedent returned the following month to report that he had completed his course of physical therapy treatment and claimed that his neck pain was "better by 90% to 95%," despite the continued presence of the swelling on his neck. Decedent, however, did complain of some pain and limitation of motion in his right hip and thigh. Defendant, therefore, ordered X rays of decedent's hip which revealed evidence of minor arthritis.

Decedent was next treated on January 2, 1998, at which time he presented with significant pain in his right hip and an area of painful swelling on his back. Since these symptoms were not consistent with the previous diagnosis of cervical spine arthritis, defendant ordered a prostate-specific antigen test and a bone scan, both of which returned negative for cancer. On January 19, 1998, when decedent returned for a follow-up examination, defendant ordered a CT scan of decedent's lower back because the area of swelling had become enlarged. The CT scan revealed that the mass on decedent's back was likely cancerous and had invaded his lumbar spinal canal. As a result, on January 27, 1998, defendant referred decedent to an oncologist who confirmed that the mass on decedent's back was a "Stage IV metastatic tumor of uncertain cell type." From that date forward, decedent was treated by the oncologist and succumbed to his cancer approximately five months later.

Plaintiff's expert medical witness testified, in substance, that given this history, which included the finding of swelling in decedent's neck area in August 1997, making any diagnosis without soft tissue evaluation through either a CT or MRI scan was contrary to accepted medical standards, and that had the misdiagnosis not occurred, decedent's discomfort could have been greatly reduced by early treatment of the cancer. In contrast, defendant's expert medical witness testified that the initial diagnosis of cervical spine arthritis was consistent with the reported symptoms and X-ray examinations. He further testified that alleviation of decedent's symptoms through chiropractic manipulation, physical therapy and pain relievers mitigated against a diagnosis of cancer as the source of decedent's complaints. Moreover, this witness concluded that even had decedent's cancer been diagnosed earlier, earlier treatment would have not been beneficial given the type of cancer which afflicted decedent. We, therefore, conclude that not only does a valid line of reasoning exist to support the jury's verdict, but the evidence does not so preponderate in favor of plaintiff that the verdict could not have been reached on any fair interpretation thereof. Accordingly, we find no error in Supreme Court's denial of plaintiff's postverdict motions.

Mercure, J.P., Spain and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, with costs.