■ Joseph A. Bradley, Respondent-Appellant, v Earl B. Feiden, Inc., Appellant-Respondent, and General Electric Company, Inc., Defendant and Third-Party Plaintiff-Appellant-Respondent. North American Sankyo Corporation, Also Known as NASCORP, Third-Party Defendant, and Mid-South

ELECTRONICS, INC., Third-Party Defendant-Appellant. [817 NYS2d 409]—

Cardona, P.J. Cross appeals from an order and judgment of the Supreme Court (Kramer, J.), entered November 12, 2004 in Schenectady County, which denied defendants' motions for a directed verdict and judgment notwithstanding the verdict and partially granted defendants' motion for summary judgment seeking contractual indemnification from third-party defendant Mid-South Electronics, Inc.

On October 2, 2000, plaintiff purchased a refrigerator manufactured by defendant General Electric Company, Inc. (hereinafter GE) from retailer defendant Earl B. Feiden, Inc. The appliance was delivered the next day to plaintiff's residence in the City of Cohoes, Albany County. On October 27, 2000, a house fire originating in plaintiff's kitchen caused extensive property damage. Plaintiff thereafter commenced this action alleging, among other things, strict products liability and breach of warranty, asserting that the fire started as a result of a manufacturing defect in the three-week-old refrigerator. Following joinder of issue, plaintiff served answers to interrogatories and a verified bill of particulars. He referenced therein a Cohoes Fire Department investigation report indicating that the fire originated in the freezer unit of the refrigerator, as well as an expert engineering report specifically attributing the cause of the fire to an electrical malfunction of the defrost timer control which caused the defrost heaters in the freezer unit to overheat and start a fire. Thereafter, GE commenced a third-party action against North American Sankyo Corporation, the manufacturer of the defrost timer, and Mid-South Electronics, Inc., the supplier of the "control bracket assembly," a component of which was the defrost timer. In the third-party complaint, GE sought common-law and contractual indemnification from both Sankyo and Mid-South.

A trial on liability was held in which plaintiff testified that, prior to the fire, the refrigerator operated properly. He also pre-

sented testimony from fire investigator Wayne Hamilton and forensic consultant David Redsicker who, following their on-site inspections, concluded that the source of the fire was the refrigerator, excluding other kitchen appliances. Plaintiff also introduced expert testimony from Robert Vasilow, an engineer, who performed a series of tests, including an X ray of the defrost timer, and opined that the fire was caused by a malfunction in that device. However, Vasilow conceded that since the X ray did not provide a clear picture of the defrost timer's inner components, it needed to be opened and examined to confirm his hypothesis. Vasilow stated that he did not seek permission to take apart the subject defrost timer or obtain an exemplar for testing. After the denial of defendants' motion for a directed verdict at the close of plaintiff's proof, both a former GE employee, as well as defendants' expert engineer, Donald Hoffman, disputed that the defrost timer was defective and, instead, opined that the fire originated in an electric can opener located on a nearby kitchen counter. Hoffman testified that he obtained an exemplar defrost timer, X-rayed the component and, after comparing the X rays of the actual component and the exemplar, indicated that they were indistinguishable and there was no evidence of a defect in the defrost timer or its associated components.

Following the close of proof, Supreme Court charged the jury with the definitions appropriate to causes of action in strict products liability and breach of the implied warranty of merchantability (see PJI3d 2:141, 2:142 [2006]). The court also specifically charged the jury that "[p]laintiff claims that the [d]efendant's product was defective because the defrost timer control failed." The jury returned a special verdict finding that the fire originated in the refrigerator and GE breached its implied warranty of merchantability.[1] However, the jury also specifically found that the defrost timer was not defective and the products liability claim was dismissed. Supreme Court, among other things, denied defendants' motion for judgment notwithstanding the verdict. Furthermore, the court partially granted defendants' motion for summary judgment seeking

---

1. Although defendants did not formally object to the verdict sheet, they argued at length following the jury charge that the manner in which the questions were presented to the jury was setting the stage "for a verdict that's based solely on speculation" and if the jury returned a verdict solely on the breach of warranty count "it would absolutely be an unsustainable verdict."

contractual indemnification to the extent that GE sought defense costs and counsel fees.[2] These cross appeals ensued.[3]

Initially, defendants maintain that Supreme Court erred in denying their motion pursuant to CPLR 4404 (a) for judgment notwithstanding the verdict. In order for a court to "set aside a verdict [as] unsupported by legally sufficient evidence and grant judgment as a matter of law, it must determine 'that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial' " (*Lawrence v Capital Care Med. Group, LLC*, 14 AD3d 833, 834 [2005], quoting *Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). Upon review of this record, we find merit in defendants' challenge to the jury's verdict that the implied warranty of merchantability was breached while, at the same time, rejecting plaintiff's claim that the defrost timer was defective and caused the fire.[4] Significantly, the defrost timer was the only defect alleged by plaintiff with respect to the subject refrigerator. No alternative theories were presented.[5] Notably, "[b]oth the strict products and breach of warranty theories of liability involve 'defective' products . . . [even if,] [i]n order to

---

**2.** Supreme Court implicitly denied Mid-South's motion seeking the dismissal of the third-party complaint.

**3.** Notably, plaintiff is not an aggrieved party herein (*see* CPLR 5511), accordingly, his cross appeal must be dismissed (*see Schramm v Cold Spring Harbor Lab.*, 17 AD3d 661, 663 [2005]). Nevertheless, plaintiff's contentions in his brief will be considered as arguments for affirmance (*see id.*; *see also Kraham v Mathews*, 305 AD2d 746, 746-747 [2003], *lv denied* 100 NY2d 512 [2003]).

**4.** We note that the jury's rejection of the theory that the defrost timer was defective was not against the weight of the evidence given the conflicting expert proof at trial.

**5.** A reading of the pleadings, proof and discussions between the parties' attorneys and Supreme Court during the jury deliberations confirms that the only defect in the freezer unit alleged by plaintiff is his contention that a defective defrost timer caused the defrost heater in *the freezer unit* to run continuously, overheat, and cause the fire. No other source of the fire in the freezer unit was articulated. The reason the special verdict sheet contained a question as to whether the fire started in the refrigerator was in response to defendants' allegation that it started on the kitchen counter and not because a separate theory was alleged by plaintiff. In fact, plaintiff's expert, Vasilow, specifically testified that the defrost heater, which is controlled by the defrost timer, is the only item in the freezer that produces any appreciable heat. It appears that the dissent is maintaining that, if the jury found that the fire started in the freezer unit, then it had to be defendants' fault, regardless of the absence of proof of defect. However, such a conclusion sounds in res ipsa loquitur, a claim that was not pleaded and could not be proven given the fact that the refrigerator was not in defendants' exclusive control (*see e.g. Steinberg v Waldner Co.*, 305 AD2d 492, 493 [2003]).

avoid confusing the jury with differing instructions as to what constitutes a 'defective' product when both theories of liability are charged, the breach of warranty charge avoids the use of the word 'defective' " (1A NY PJI3d 742 [2006]; *cf. Fritz v White Consol. Indus.*, 306 AD2d 896, 897-898 [2003]). Thus, the necessity of proving a defective product remained, despite the fact that the jury found for plaintiff on the implied warranty of merchantability claim and not the strict products liability cause of action.[6]

Furthermore, cases where plaintiffs are able to prove that a particular product is defective by resting entirely on circumstantial evidence are not apposite herein. While there is no question that defects can be proved by circumstantial evidence "in the absence of evidence identifying a specific flaw" (*Speller v Sears, Roebuck & Co.*, 100 NY2d 38, 41 [2003]; *see Maciarello v Empire Comfort Sys.*, 16 AD3d 1009, 1011 [2005]; American Law of Products Liability 3d § 92:6; *see also Shelden v Hample Equip. Co.*, 89 AD2d 766, 767 [1982], *affd on mem below* 59 NY2d 618 [1983]), here, plaintiff did identify a specific flaw, i.e., the defrost timer, and defendants tailored their defense to plaintiff's claim that the fire originated in the freezer unit of the refrigerator. Notably, the Pattern Jury Instructions include a specific charge for circumstantial evidence, a charge that was neither requested nor given in this case (*see* 1A PJI3d 2:141.1 [2006]). While there is no question that a jury verdict deserves deference, it appears that, here, the jury could only have reached this verdict by speculating as to the cause of the fire that was not specified in

---

**6.** We note that defendants also advance a persuasive argument that the verdict was flawed because the jury rejected the strict products liability claim while finding for plaintiff on the breach of warranty claim. Notably, while such a result is not improper per se (*see* 1 Madden & Owen on Products Liability § 5:9 [3d ed]), the circumstances where a product is reasonably found to be not defective for purposes of strict products liability yet unfit for ordinary purposes are not present herein. Typically, where such a result has been upheld or contemplated, it is in situations where the consumer purchased products that were not defective for the purpose for which they were designed, but, because the products were *marketed* in such a way that the consumer was encouraged to use them for an infeasible purpose, it was found that there was a breach of warranty (*see e.g. Denny v Ford Motor Co.*, 87 NY2d 248 [1995] [vehicle designed for off-road driving marketed as safe for everyday driving]; *see also Castro v QVC Network, Inc.*, 139 F3d 114 [1998] [pan designed to hold low volume foods marketed as safe for cooking a 25-pound turkey]). In other words, "[t]he fact that a product's overall benefits might outweigh its overall risks does not preclude the possibility that consumers may have been misled into using the product in a context in which it was dangerously unsafe" (American Law of Products Liability 3d § 18:35). Here, there was no proof that plaintiff was misled by defendants into using the refrigerator in a manner other than that for which it was intended, i.e., storing food.

the pleadings or proof. Therefore, inasmuch as it appears that there exists no valid line of reasoning or permissible inferences that could lead rational persons to conclude that the refrigerator was not defective, yet was nevertheless not fit to be used for its ordinary purposes on the date of the fire, we are constrained to conclude that Supreme Court erred in not granting defendants' posttrial motion seeking dismissal of the complaint.[7]

In addition, with respect to Mid-South's contentions on appeal, inasmuch as the contract at issue clearly requires Mid-South to *defend* GE for any product liability claims relating to the control bracket assembly, Supreme Court properly found that Mid-South is required to indemnify GE for all costs associated with defending this action. Nevertheless, given our ruling that plaintiff's complaint should be dismissed, we conclude that the remainder of the third-party complaint should be dismissed as well.

The remaining issues argued by the parties have been considered and found either unpersuasive or unnecessary to reach in light of the above disposition.

Crew III and Spain, JJ., concur.

Lahtinen, J. (dissenting). We respectfully dissent. In the special verdict sheet and its charge to the jury (which elicited no objection), Supreme Court tied a finding regarding the defrost timer to the products liability cause of action, but did not require a finding about the defrost timer for the breach of implied warranty claim. Question number two of the special verdict sheet instructed the jurors that, if they did not find the defrost timer was defective, then they nevertheless should proceed to question number four, which asked: "Did [defendant] General Electric [Company, Inc. (hereinafter GE)] breach its warranty in that the refrigerator/freezer was not reasonably fit for its intended purpose?" The jurors followed these instructions, they sought pertinent clarification, and they rendered a rational verdict supported by the law as charged to them and the facts (after credibility determinations) presented at trial. Accordingly, we would affirm Supreme Court's denial of defendants' motions for a directed verdict and judgment notwithstanding the verdict.

---

**7.** Contrary to the dissent's argument, there would be no basis for remitting this case for a new trial even assuming that Supreme Court erred by not properly informing the jury that a defect had to be proven in order to sustain either cause of action. In other words, an appropriately expansive explanation by the court to the jury regarding the defect issue could only have properly produced a dismissal of the complaint since the only defect alleged by plaintiff was rejected.

Plaintiff's pleadings and proof identified the new refrigerator as the origin of the fire and specifically identified the defrost timer as the cause of the fire. While the jury rejected plaintiff's theory that the defrost timer was the cause of the fire, it accepted the testimony from the fire investigator and the forensic consultant, the only witnesses who performed on-site investigations, that placed the source of the fire in the freezer unit of the refrigerator and excluded all causes of the fire not attributable to defendants. Such proof was sufficient to satisfy plaintiff's burden of proof in order to establish a prima facie case for breach of the implied warranty of fitness and merchantability (*see* UCC 2-314 [2] [c]; *Denny v Ford Motor Co.*, 87 NY2d 248, 258-259 [1995]; *Wojcik v Empire Forklift, Inc.*, 14 AD3d 63, 66 [2004]). Indeed, such proof would have satisfied plaintiff's burden in establishing his strict products liability cause of action without proof that the defrost timer was defective (*see Speller v Sears, Roebuck & Co.*, 100 NY2d 38, 41-43 [2003]; *Caprara v Chrysler Corp.*, 52 NY2d 114, 123 [1981]; *Halloran v Virginia Chems.*, 41 NY2d 386, 388 [1977]; *Brown v Borruso*, 238 AD2d 884, 885 [1997]).

Nor do we believe that the record reflects that defendants tailored their defense to plaintiff's allegation of the specific defect in the defrost timer. Defendants' expert not only attacked plaintiff's theory of a specific defect in the defrost timer, but also testified extensively about "arc mapping" and fire patterns to support his opinion that the fire originated, not in the refrigerator, but in a can opener plugged into an outlet in an area away from the refrigerator. The fact that there were two theories in play was further tacitly acknowledged by defendants' counsel in his motion to dismiss at the close of all proof when he argued that the evidence was inadequate for "a [j]ury to find that this fire originated in this refrigerator or that it originated because of a defect in the timer, defrost timer."

The jurors deliberated, they sought a read-back of witnesses' testimony, they deliberated further, and then returned with the following question: "For us to find for the Plaintiff, do we have to agree that the defrost timer was at fault, or do we just have to say that the origin of the fire was in the freezer?" Supreme Court conferred with the attorneys off the record, it reread the original charge to the jury, and added by way of "clarif[ication]" that if the jury did not find for plaintiff on the products liability claim it "must still proceed" and address the breach of war-

ranty claim.[1] The record reveals that the jurors followed Supreme Court's instructions and rendered a verdict supported by a valid line of reasoning and permissible inferences.[2]

Finally, we believe that GE's motion for contractual indemnification from third-party defendant Mid-South Electronics, Inc. should have been denied, and Mid-South's motion to dismiss the third-party action against it granted. Mid-South's role was limited to assembling the defrost timer (which was manufactured by third-party defendant North American Sankyo Corporation) into a bracket control assembly. Since the jury specifically rejected the defrost timer as a cause of the fire, there was no basis under the contract to require Mid-South to indemnify GE in any respect (*see generally Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491-492 [1989]; *Viacom Inc. v Philips Elecs. N. Am. Corp.*, 16 AD3d 215, 215-216 [2005]; *Szafranski v Niagara Frontier Transp. Auth.*, 5 AD3d 1111, 1113 [2004]; *Brasch v Yonkers Constr. Co.*, 306 AD2d 508, 510-511 [2003]).

Mugglin, J., concurs. Ordered that the order and judgment is modified, on the law, without costs, by reversing so much thereof as denied defendants' motion to set aside the verdict and dismiss the complaint; said motion granted and complaint and third-party complaint dismissed; and, as so modified, affirmed. Ordered that the cross appeal by plaintiff is dismissed, without costs.

---

1. The "argu[ment] at length" by defendants' attorneys regarding the verdict sheet, which the majority refers to in its first footnote, occurred at this point, well after the jury was engaged in its deliberations.

2. While we believe that the record fully supports affirming, we would note that, even if there were errors of law in the manner in which the elements of the causes of action were presented in the charge and/or the special verdict sheet, the appropriate remedy would be remittal for a new trial and not dismissal (*see Fritz v White Consol. Indus.*, 306 AD2d 896, 898 [2003]).