[864 NE2d 600, 832 NYS2d 470]

JOSEPH A. BRADLEY, Appellant, v EARL B. FEIDEN, INC., et al., Respondents. GENERAL ELECTRIC COMPANY, INC., Third-Party Plaintiff-Respondent, v NORTH AMERICAN SANKYO CORPORATION, Also Known as NASCorp, Third-Party Defendant, and MID-SOUTH ELECTRONICS, INC., Third-Party Defendant-Appellant.

Argued January 2, 2007; decided February 20, 2007

**POINTS OF COUNSEL**

*Friedman, Hirschen & Miller, LLP,* Albany (*Lynn M. Blake* of counsel), for appellant. I. The Appellate Division committed reversible error by deciding the underlying legal issues, because defendants failed to timely and properly object to the special verdict sheet, the jury charge and the alleged inconsistent verdict. (*Hunt v Bankers & Shippers Ins. Co. of N.Y.,* 50 NY2d 938; *Caprara v Chrysler Corp.,* 71 AD2d 515, 52 NY2d 114; *Barry v Manglass,* 55 NY2d 803; *Delaney v Philhern Realty Holding Corp.,* 280 NY 461.) II. The Appellate Division committed reversible error by reversing the trial court's denial of defendants' posttrial motion and dismissing plaintiff's complaint. (*Cohn v Lionel Corp.,* 21 NY2d 559; *Ribley v Harsco Corp.,* 57 AD2d 234; *Denny v Ford Motor Co.,* 87 NY2d 248; *Wojcik v Empire Forklift, Inc.,* 14 AD3d 63.)

*Thuillez, Ford, Gold, Johnson & Butler, LLP,* Albany (*Donald P. Ford, Jr.,* of counsel), for third-party appellant. I. General Electric Company is not entitled to contractual indemnification. (*Voss v Black & Decker Mfg. Co.,* 59 NY2d 102; *Liriano v Hobart Corp.,* 92 NY2d 232; *Margolin v New York Life Ins. Co.,* 32 NY2d 149; *Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153; *Rodriguez v Baker,* 91 AD2d 143; *Niagara Frontier Transp. Auth. v Tri-Delta Constr. Corp.,* 107 AD2d 450; *Gross v Sweet,* 49 NY2d 102; *Consolidated Gas Supply Corp. v Matula,* 42 AD2d 656; *Kowalczyk v Flintkote Co.,* 91 Misc 2d 62; *Sprung v MTR Ravensburg,* 99 NY2d 468.) II. General Electric Company seeks indemnification for the alleged fault of both General Electric

and North American Sankyo Corporation. (*Margolin v New York Life Ins. Co.*, 32 NY2d 149; *Levine v Shell Oil Co.*, 28 NY2d 205; *Niagara Frontier Transp. Auth. v Tri-Delta Constr. Corp.*, 107 AD2d 450; *Hooper Assoc. v AGS Computers*, 74 NY2d 487.) III. The jury verdict precludes indemnification for defense costs. (*Viacom Inc. v Philips Elecs. N. Am. Corp.*, 16 AD3d 215; *Brasch v Yonkers Constr. Co.*, 306 AD2d 508; *Rodriguez v Savoy Boro Park Assoc. Ltd. Partnership*, 304 AD2d 738; *Medina v New York El. Co.*, 250 AD2d 656; *Cannavale v County of Westchester*, 158 AD2d 645; *State of New York v Syracuse Rigging Co.*, 249 AD2d 758; *International Paper Co. v Continental Cas. Co.*, 35 NY2d 322; *Hotel des Artistes, Inc. v General Acc. Ins. Co. of Am.*, 9 AD3d 181.) IV. The court improperly denied the motion for summary judgment for any claims of indemnity arising after the verdict. (*McGregor v Dimou*, 101 Misc 2d 756.)

*Goldberg Segalla LLP,* Buffalo (*John P. Freedenberg* of counsel), for respondents. I. The Appellate Division correctly granted defendants' posttrial motion for a directed verdict. (*Cohen v Hallmark Cards*, 45 NY2d 493; *Szczerbiak v Pilat*, 90 NY2d 553; *Clarke v Helene Curtis, Inc.*, 293 AD2d 701; *Tardella v RJR Nabisco*, 178 AD2d 737; *Rosado v Proctor & Schwartz*, 66 NY2d 21; *Codling v Paglia*, 32 NY2d 330; *Henry v General Motors Corp., Chevrolet Motor Div.*, 201 AD2d 949; *McArdle v Navistar Intl. Corp.*, 293 AD2d 931; *Denny v Ford Motor Co.*, 87 NY2d 248; *Fritz v White Consol. Indus.*, 306 AD2d 896.) II. The Appellate Division correctly found that Mid-South Electronics, Inc. is contractually obligated to indemnify defendants for defense costs. (*Levine v Shell Oil Co.*, 28 NY2d 205; *Hogeland v Sibley, Lindsay & Curr Co.*, 42 NY2d 153; *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774; *Kay-Bee Toys Corp. v Winston Sports Corp.*, 214 AD2d 457; *DiPerna v American Broadcasting Cos.*, 200 AD2d 267; *Breed, Abbott & Morgan v Hulko*, 139 AD2d 71; *Torres v Morse Diesel Intl., Inc.*, 14 AD3d 401; *Brown v Two Exch. Plaza Partners*, 76 NY2d 172; *Barnes v New York Mercantile Exch.*, 7 AD3d 304; *Santos v BRE/Swiss, LLC*, 9 AD3d 303.)

### OPINION OF THE COURT

CIPARICK, J.

At issue in this appeal is whether legally sufficient evidence exists to support the jury's verdict in favor of plaintiff on a breach of warranty claim against the manufacturer and retailer of a refrigerator unit, in light of the jury also finding for the

manufacturer on a related products liability claim. Additionally, we are asked to determine if the supplier of the bracket control assembly component of the refrigerator is contractually required to indemnify the manufacturer. We answer both questions in the affirmative.

In early October 2000, plaintiff, Joseph Bradley, purchased a new General Electric Hotpoint refrigerator from defendant Earl B. Feiden, Inc. (Feiden), an appliance retailer. The refrigerator was manufactured by General Electric Company (GE) with a freezer on the top and a fresh food compartment on the bottom. Three weeks later, on the afternoon of October 27, 2000, a fire broke out in plaintiff's kitchen causing damage to his home. Approximately 15 firefighters responded to the scene and, once the fire was extinguished, a crew of investigators remained to probe its cause.

A preliminary Fire Investigation Report was prepared that day by the Fire Department's investigators. The report form lists "kitchen refrigerator/freezer" as the "Origin of Fire." The "Investigator's Remarks" segment of the report states: "Origin of fire in area inside freezer unit of refrigerator. Fire extended to cabinet/overhead area which extended to kitchen area and attic. Heat and smoke damage throughout." A basic fire incident report was filed the same day listing "refrigerator/freezer" as the source of the fire.[1]

Plaintiff subsequently commenced a property damage action against defendants, GE and Feiden, alleging three separate causes of action—negligence, strict products liability and breach of implied warranty of merchantability under UCC 2-314 (2) (c). GE, in turn, filed a third-party action against North American Sankyo Corporation (NASCorp) and Mid-South Electronics, Inc. (Mid-South). The third-party complaint sought common-law indemnification from NASCorp, the manufacturer of the defrost timer, and contractual indemnification from Mid-South, producer and supplier of the bracket control assembly that incorporated the defrost timer.

At trial on the question of liability, plaintiff and three witnesses testified—firefighter/investigator Wayne Hamilton, forensic consultant David Redsicker and engineer Robert Vasilow. Hamilton, a 15-year veteran of the Cohoes Fire Department,

---

**1.** General Municipal Law § 204-d requires the chief of a fire department to determine the cause, if possible, of a fire and file a report indicating said cause. This report, the basic fire incident report, is filed with the State's Fire Incident Reporting System.

testified that, from his firsthand investigation he believed "the point of origin was in the interior of the freezer, in the refrigerator-freezer unit" based in part on the "extreme amount of burn" in and around the freezer compartment. Redsicker testified that he had examined and determined the origin of over 2,500 fires. Based on his investigation of the subject fire, which included an on-site visit to plaintiff's home, he opined that the point of origin of the fire was the "refrigerator-freezer." This was evident by the high concentration of "charring" and damage in and around the freezer unit. Redsicker further ruled out the can opener as the source of the fire, as proffered by the defense, as that appliance was located near many combustible objects that were not badly damaged by the fire.

Vasilow, a coemployee of Redsicker, examined the refrigerator/freezer as well as various other artifacts, including the can opener, in his laboratory. Based on his review of an x-ray of the refrigerator's defrost timer (which he believed showed a blown fuse and melted wire) as well as his examination of other related objects, he opined that the fire was caused by the defrost timer failing to perform as intended. Specifically, he stated that the defrost timer malfunctioned which resulted in excessive heating of the coils, the melting of the insulation and the ignition of the fire. On cross-examination, Vasilow conceded that he never dismantled the defrost timer or compared it to an exemplar.

At the conclusion of plaintiff's case-in-chief, GE moved for a directed verdict, arguing that the "proof was insufficient to meet [plaintiff's] burden." The court denied the motion and GE proceeded to call its two witnesses, Donald Hoffmann and James Allison. Hoffmann, an engineer, testified that he obtained an exemplar defrost timer, took x-rays in a similar manner as did Vasilow, compared the two and found no difference. He further testified that he examined the actual defrost timer and believed it to be functional. He opined that the fire did not originate from the defrost timer, but rather, based on evidence of electrical arcing in the can opener, likely started after an unknown impetus caused the can opener's switch to close, allowing the motor to overheat. Allison, a former GE engineer, testified that the defrost timer is tested throughout the design and production phases and must pass both Underwriters Laboratories' safety requirements and a more comprehensive set of in-house tests; had there had been a defect in the defrost timer it would have been detected a "[h]undred percent of the time."

At the close of its case, GE renewed its motion for a directed verdict, arguing that "[t]he proof simply has not been presented by the Plaintiff and the testimony is now overwhelmingly in favor of a directed verdict on behalf of the defense." The court reserved judgment and the jury was given separate charges on strict products liability and breach of warranty. The jury was also given a special verdict sheet with the following five questions:

> "Did the fire that occurred on October 7, 2000 at 4 Carl Place, Cohoes, New York originate in the General Electric refrigerator/freezer? . . .

> "Was the defrost timer installed in the General Electric refrigerator/freezer defective? . . .

> "Was the defect in the defrost timer installed in the General Electric refrigerator/freezer a substantial contributing factor in causing the fire that occurred on October 7, 2000 at 4 Carl Place, Cohoes, New York? . . .

> "Did General Electric breach its warranty in that the refrigerator/freezer was not reasonably fit for its intended purpose? . . .

> "Was the breach of warranty by General Electric a substantial contributing factor in causing the fire that occurred on October 7, 2000 at 4 Carl Place, Cohoes, New York?"

GE did not object to the jury charge or the verdict sheet.

During deliberations, the jury asked the court: "For us to find for the Plaintiff, do we have to agree that the defrost timer was at fault, or do we just have to say that the origin of the fire was the freezer?" The court responded by reading back the charges on strict products liability and breach of warranty. The court further instructed the jury that, even if it determined that the defrost timer was not defective or that the defect was not a substantial cause of the fire, it should proceed to consider plaintiff's claim for breach of warranty. In response, GE argued that a jury finding that there was no defect with the defrost timer but nevertheless a breach of implied warranty would be unsustainable based on speculation. The jury then reached a verdict in which it held in favor of GE on the products liability claim but found for plaintiff on the breach of warranty claim. The jury answered the first question on the special verdict sheet

"Yes" and the second question "No"; it left the third question unanswered as academic and answered the fourth and fifth questions "Yes."

Only after the jurors were discharged did GE renew its motion for a directed verdict on sufficiency grounds and also seek to set aside the verdict as irreconcilable. Separately, GE also made a motion for summary judgment against Mid-South on the contractual indemnification claim. Mid-South responded with a cross motion seeking summary judgment dismissing the indemnification claim. Supreme Court denied GE's motions for a directed verdict and to set aside the verdict but granted its motion for defense costs and attorney fees in an amount to be determined. Both GE and Mid-South appealed. The Appellate Division, with two Justices dissenting, reversed Supreme Court's denial of GE's posttrial motion and dismissed the complaint stating:

> "inasmuch as it appears that there exists no valid line of reasoning or permissible inferences that could lead rational persons to conclude that the refrigerator was not defective, yet was nevertheless not fit to be used for its ordinary purposes on the date of the fire, we are constrained to conclude that Supreme Court erred in not granting defendants' posttrial motion seeking dismissal of the complaint" (30 AD3d 709, 714 [2006]).

The Court then affirmed, also with two Justices dissenting, the trial court's grant of summary judgment to GE on the contractual indemnification claim. Plaintiff now appeals as of right under CPLR 5601 (a) and Mid-South appeals by permission of the Appellate Division under CPLR 5602 (b), a question having been certified to us by that Court.

GE raised various objections to the sufficiency of plaintiff's proof throughout the proceeding but never objected to the jury instructions or the special verdict sheet.[2] GE's sufficiency argument must therefore be examined in light of the language of the jury instructions and verdict sheet, which became the law of the case (see Barry, 55 NY2d at 805). Whether these instructions— which clearly tied the products liability claim to the defrost timer, but not the breach of warranty claim—were correct is not

---

**2.** To the extent that GE also claims that the jury verdict was inconsistent, that argument is unpreserved as it was not properly raised prior to discharge of the jury (see Barry v Manglass, 55 NY2d 803, 806 [1981]).

before us. Thus, under the law of the case, we are now called upon to determine if the Appellate Division erred in holding that the trial court should have granted GE's motion for a directed verdict based on insufficient evidence. To set aside a jury verdict on this basis, we must of course "conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]).

For a breach of warranty of merchantability claim, to support a verdict for plaintiff, the jury needed to find that the product was not "fit for the ordinary purposes for which such goods are used" (UCC 2-314 [2] [c]; *see also Denny v Ford Motor Co.*, 87 NY2d 248, 258-259 [1995]). Such a verdict may be sustainable solely on circumstantial evidence (*cf. Speller v Sears, Roebuck & Co.*, 100 NY2d 38, 41 [2003] [product defects can be proved by circumstantial evidence "in the absence of evidence identifying a specific flaw"]).

The special verdict sheet given to the jury inquired as to whether the defrost timer in the refrigerator was defective as well as whether GE "breach[ed] its warranty in that the refrigerator/freezer was not reasonably fit for its intended purpose." The jury unanimously rejected the claim that the defrost timer was defective given the conflicting evidence at trial but found that the subject product was not fit for its intended purpose.

█ Although the proof adduced at trial primarily focused on an alleged defect in the defrost timer, there was also evidence that the fire originated in the refrigerator/freezer. Specifically, the Fire Department reports admitted into evidence identified the refrigerator/freezer as the origin of the fire. Fire investigator Hamilton along with the forensic consultant Redsicker, the only witnesses who did on-site investigations, both testified that the fire had its roots in the freezer part of the unit. Surely, a jury could rationally conclude that such an appliance was not fit for its intended purpose, regardless of whether the defrost timer was defective, and thus that GE breached the implied warranty of merchantability.

The verdict sheet, as well as the jury instructions, specifically tied the strict products liability claim—but not the breach of warranty claim—to the defrost timer. Thus, a rational jury could have found that the defrost timer claim should be rejected, while

also placing the source of the fire in the freezer. Since the jury was not asked whether the refrigerator was free from defect— only if the defrost timer was defective—the Appellate Division's opinion that the jury could not rationally find that the refrigerator was not defective, yet was nevertheless not fit to be used for its ordinary purposes, cannot be sustained here. There was sufficient evidence presented to support the claim that the refrigerator was not fit for its ordinary purpose. Accordingly, the jury's verdict should be reinstated and the matter remitted to the Appellate Division for review of the facts (*see* CPLR 5612, 5613, 5712).

■ Turning to the contractual indemnification claim, the contract between GE and Mid-South provides:

> "(19) PRODUCT LIABILITY—Supplier shall protect, defend, hold harmless, indemnify and reimburse Buyer and its distributors, dealers, affiliates and customers, during the term of this Contract and thereafter from and against any liability, claim, cost, or expense . . . arising out of actual or alleged death or injury to any person, or damage to tangible property, by whomever suffered, or arising out of (a) any failure of Products to comply with applicable specifications (functional, design or otherwise), warranties, certifications under this Contract; or (b) the negligence of Supplier in design, manufacture or otherwise with respect to Products or parts therefor; or (c) *claims based on strict or product liability relating to Product*; or (d) failure to warn or inadequate warnings or instructions. Buyer reserves the right to settle all such claims at its own expense" (emphasis added).

The "Product" supplied by Mid-South was the bracket control assembly that included the defrost timer and related wiring. Plaintiff, in the underlying action, claimed that the defrost timer, admittedly part of Mid-South's product, was defective. Given the verdict, the issue of indemnification here is limited to the defense costs of litigation.

A contract that provides for indemnification will be enforced as long as the intent to assume such a role is "sufficiently clear and unambiguous" (*Rodrigues v N & S Bldg. Contrs., Inc.*, 5 NY3d 427, 433 [2005]). A court must also be careful not to interpret a contracted indemnification provision in a manner that would render it meaningless (*see Levine v Shell Oil Co.*, 28

NY2d 205, 212 [1971]). When the intent is clear, an indemnification agreement will be enforced even if it provides indemnity for one's own or a third party's negligence (*see e.g. Levine*, 28 NY2d at 210, 213 [indemnification agreement which covered "any and all claims, suits, loss, cost and liability on account of injury or death of persons or damage to property" held enforceable to require operator of gas station to cover the owner of the station's own negligence]; *Gross v Sweet*, 49 NY2d 102, 108 [1979] ["the law . . . will recognize an agreement to relieve one party from the consequences of his negligence on the strength of a broadly worded clause framed in less precise language than would normally be required" when the agreement is negotiated by sophisticated parties as an allocation of risk]).

Here, Mid-South agreed to defend and indemnify GE for all "claims based on strict or product liability relating to Product." Since the defrost timer is a component of Mid-South's product, the language of the indemnification agreement applies. Mid-South attempts to frame its assent as a product of an unequal bargaining position, as GE requires its vendors to accept the conditions before awarding a contract. As we stated in *Levine*, if the indemnitor "had reservations as to the scope of the agreement, he should have insisted on a different indemnification clause or refused to give his assent to the contract" (28 NY2d at 213). As the agreement is clear, unequivocal and unambiguous, the trial court properly granted summary judgment to GE finding that Mid-South is required to indemnify GE.

Mid-South argues that the jury's verdict, finding no defect in the defrost timer, precludes indemnification. Under the parties' agreement, indemnification was triggered by any "claims based on strict or product liability." There was no requirement that the claim be successful in order to require indemnification of defense costs. The actual fault of the parties is irrelevant. However, since the jury found no defect in the defrost timer, Mid-South's duty to defend and indemnify ended at the verdict and Supreme Court's holding that Mid-South was responsible for all costs associated with defending this action to that point was proper.

Accordingly, the order of the Appellate Division should be modified, with costs to plaintiff against defendants, by reinstating the jury verdict and remitting to the Appellate Division for consideration of the facts and, as so modified, affirmed, with costs to third-party plaintiff General Electric Company against Mid-South Electronics, Inc. The certified question, limited to

the third-party defendant-appellant's appeal, should be answered in the negative.

Chief Judge KAYE and Judges GRAFFEO, SMITH and PIGOTT concur; Judges READ and JONES taking no part.

Order modified, etc.