Graffeo, J.
(dissenting). Plaintiff Manuel Reis was grievously injured when a 1987 manual transmission station wagon, designed and manufactured by the Volvo defendants, unexpectedly lurched forward after the ignition was started, pinning him against a building. Plaintiffs left leg was crushed and subsequently amputated. Undisputedly, this accident and plaintiffs resulting injuries would not have occurred if Volvo had designed the station wagon with a starter interlock device.
Throughout the lengthy trial of plaintiff’s negligence and strict liability causes of action for design defect and failure to warn, both sides presented extensive evidence bearing upon the reasonableness of Volvo’s decision not to use a starter interlock *45 device in its automotive design. Plaintiffs proof included expert testimony establishing that the starter interlock device was a feasible safety feature available in 1987 that would have cost Volvo approximately $5 per vehicle, and which was, in fact, incorporated in many manual transmission automobiles of other manufacturers that year. According to plaintiffs experts, the automobile industry was generally aware of the risk to motorists and pedestrians inherent in vehicles designed without these devices. Plaintiffs experts further opined that the station wagon in question was dangerous as designed without a starter interlock.
Volvo conceded feasibility, but contended that the station wagon was reasonably safe as designed. To that effect, Volvo presented expert testimony contradicting plaintiffs proof regarding the extent to which other manufacturers used the device in 1987. Volvo asserted that it had reasonably decided to omit starter interlock devices from its vehicles because the risk of an accident such as the one that occurred here was minimal and, without the device, a vehicle could be moved for a short period of time in an emergency situation if the engine was not functioning properly.
At the close of proof, the trial court charged the jury with the principles of negligence reflected in PJI 2:125 (Products Liability — Negligence), PJI 2:15 (Common Law Standard of Care — Defendant Having Special Knowledge), and PJI 2:16 (Common Law Standard of Care — Customary Business Practices) with respect to plaintiffs negligent design claim. The PJI 2:15 charge, in essence, instructed the jury that Volvo, possessing special training and experience, owed a duty to use the same degree of skill and care as other manufacturers in the automobile industry. Typically, the community standard of care embodied in PJI 2:15 applies to claims grounded in malpractice (see 1A NY PJI3d 2:15 at 259 [2014]). Liability in negligent design cases turns more properly — not on this community standard of care — but on whether “if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner” (Voss v Black & Decker Mfg. Co., 59 NY2d 102, 108 [1983]; see Adams v Genie Indus., Inc., 14 NY3d 535, 543 [2010]; Denny v Ford Motor Co., 87 NY2d 248, 257 [1995], rearg denied 87 NY2d 969 [1996]). It follows then, that PJI 2:15 should ordinarily not be charged in relation to negligent design claims. As the majority points out, however, the difference between these two standards *46 of care is a subtle one and, in some cases, this type of slight misstep may not require reversal (see majority op at 42-43). I believe that this is such a case.
The trial judge charged PJI 2:15 in the context of its instructions to the jury on the general principles of negligence set forth in PJI 2:125. Significantly, the PJI 2:125 charge instructed the jury that the degree of care owed by Volvo was that of a “reasonably prudent manufacturer.” The propriety of this instruction is beyond our review, having been submitted to the jury at Volvo’s request (see Bradley v Earl B. Feiden, Inc., 8 NY3d 265, 272 [2007]; Barry v Manglass, 55 NY2d 803, 805-806 [1981], rearg denied 55 NY2d 1039 [1982]; Rupert v Sellers, 50 NY2d 881, 882-883 [1980]). Viewed in this light, the PJI 2:15 charge, in effect, merely repeated a similar standard of care as that which was charged to the jury at Volvo’s insistence.
Moreover, PJI 2:16 was charged to the jury after PJI 2:15.* This later charge explained to the jury that, when considering the trial evidence pertaining to the practices of other automobile manufacturers, Volvo’s conduct was “not to be considered unreasonable simply because someone else may have used a safer practice” and, further, that it must take into account “all the facts and circumstances” when determining whether Volvo acted reasonably in designing the station wagon without a starter interlock device. PJI 2:16 therefore dispelled any notion that the jury’s determination should be based solely on the conduct of other manufacturers. Viewing the contested jury instructions as a whole and “as tailored to the facts of this case,” I agree with the Appellate Division majority that the PJI 2:15 charge does not warrant reversal under these circumstances (Reis v Volvo Cars of N. Am., 105 AD3d 663, 664 [1st Dept 2013]; see generally Wild v Catholic Health Sys., 21 NY3d 951, 955 [2013]; Nestorowich v Ricotta, 97 NY2d 393, 401 [2002]).
As the courts below held and the majority of this Court concedes, Volvo failed to preserve any challenge to the consistency of the negligent design and strict liability design defect verdicts (see Bradley, 8 NY3d at 272 n 2; Barry, 55 NY2d at 806). But the majority relies exclusively on this claimed inconsistency in concluding that PJI 2:15 confused the jury. In my view, under these unique facts, the majority’s holding allows *47 Volvo to evade the well-settled preservation requirement and benefit from its failure to provide the trial court with the opportunity to cure any inconsistency before discharging the jury. Because ample evidence supported the jury’s negligent design verdict and I find Volvo’s other arguments for reversal unpersuasive, I would uphold the jury verdict.
Chief Judge Lippman and Judges Read, Pigott and Rivera concur with Judge Smith; Judge Graffeo dissents and votes to affirm in an opinion; Judge AlBDus-Salaam taking no part.
Order reversed, with costs, and a new trial ordered.

 I agree with the majority that sufficient evidence was presented to justify submitting the customary business practices charge to the jury.