Olivieri v Barnes & Noble, Inc. (2022 NY Slip Op 04849)

Olivieri v Barnes & Noble, Inc.

2022 NY Slip Op 04849

Decided on August 4, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 4, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, PERADOTTO, CURRAN, AND BANNISTER, JJ.

448 CA 21-00496

[*1]LORI J. OLIVIERI, PLAINTIFF,
v
BARNES & NOBLE, INC., ET AL., DEFENDANTS.
BARNES & NOBLE, INC., THIRD-PARTY PLAINTIFF-RESPONDENT,
v
NATIONAL JANITORIAL SOLUTIONS INCORPORATED, THIRD-PARTY DEFENDANT-APPELLANT, ET AL., THIRD-PARTY DEFENDANTS. 

SUGARMAN LAW FIRM, LLP, SYRACUSE (JENNA W. KLUCSIK OF COUNSEL), FOR THIRD-PARTY DEFENDANT-APPELLANT.
GOLDBERG SEGALLA, LLP, BUFFALO (JAMES M. SPECYAL OF COUNSEL), FOR DEFENDANT-THIRD-PARTY PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Diane Y. Devlin, J.), entered March 11, 2021. The order granted in part the motion of defendant-third-party plaintiff for partial summary judgment in the third-party action and denied the cross motion of third-party defendant National Janitorial Solutions Incorporated for summary judgment dismissing the third-party complaint and all cross claims against it. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by granting those parts of the cross motion seeking summary judgment dismissing the first cause of action, the third cause of action insofar as it is based on the alleged failure to procure insurance, the fifth cause of action, and all cross claims against third-party defendant National Janitorial Solutions Incorporated, and as modified the order is affirmed without costs.
Memorandum: Plaintiff commenced the underlying negligence action against defendant-third-party plaintiff, Barnes & Noble, Inc. (BN), seeking to recover damages for injuries she allegedly sustained as a result of a slip and fall at one of BN's stores. BN subsequently commenced this third-party action against, among others, third-party defendant National Janitorial Solutions Incorporated (NJS), alleging that NJS had agreed to provide janitorial services at the subject store, that the agreement between BN and NJS contained an indemnification provision, and that NJS had subcontracted with others who had performed janitorial services on the premises where plaintiff allegedly fell on the date of the accident. BN asserted causes of action for common-law and contractual indemnification against NJS and third-party defendant subcontractors and for breach of contract against NJS. NJS now appeals from an order that, in effect, granted in part BN's motion for summary judgment on its cause of action seeking contractual indemnification from NJS, subject to an inquest on damages, and denied NJS's cross motion for summary judgment dismissing the third-party complaint and all cross claims against it.
In a prior order in the underlying action, Supreme Court determined that plaintiff could not establish that the floor in BN's store was negligently maintained, which order was later affirmed by this Court (Olivieri v Barnes & Noble, Inc., 203 AD3d 1589, 1589-1590 [4th Dept 2022], affg — Misc 3d &mdash, 2020 NY Slip Op 34752[U] [Sup Ct, Erie County 2021]). On that [*2]basis, NJS contends that the court should have denied BN's motion for summary judgment on its cause of action for contractual indemnification from NJS and granted NJS's cross motion for summary judgment dismissing that cause of action because, contrary to BN's assertion and the court's determination, the contractual indemnification provision of the agreement is not triggered by the mere assertion of a claim but, instead, requires a finding of an actual breach of the agreement by NJS. In NJS's view, because no breach of the agreement can be found, the indemnification provision can never be triggered in this case, and BN's contractual indemnification cause of action against NJS should be dismissed on that basis. We reject NJS's contention. Instead, we conclude that BN established its entitlement to summary judgment on its cause of action for contractual indemnification from NJS insofar as it is based on plaintiff's claim or action, that NJS failed to raise a triable issue of fact in opposition thereto, and that NJS failed to meet its burden on its cross motion insofar as it sought summary judgment dismissing the contractual indemnification cause of action against NJS to that extent (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
"[I]t is elementary that the right to contractual indemnification depends upon the specific language of the contract" (Gillmore v Duke/Fluor Daniel, 221 AD2d 938, 939 [4th Dept 1995]; see Miller v Rerob, LLC, 197 AD3d 979, 981 [4th Dept 2021]). "A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances' " (Drzewinski v Atlantic Scaffold & Ladder Co., 70 NY2d 774, 777 [1987], quoting Margolin v New York Life Ins. Co., 32 NY2d 149, 153 [1973]). Consequently, "[a] contract that provides for indemnification will be enforced as long as the intent to assume such a role is 'sufficiently clear and unambiguous' " (Bradley v Earl B. Feiden, Inc., 8 NY3d 265, 274 [2007]).
"When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed" (Hooper Assoc. v AGS Computers, 74 NY2d 487, 491 [1989]). Thus, "[t]he language of an indemnity provision should be construed so as to encompass only that loss and damage which reasonably appear to have been within the intent of the parties" (Niagara Frontier Transp. Auth. v Tri-Delta Constr. Corp., 107 AD2d 450, 453 [4th Dept 1985], affd for reasons stated 65 NY2d 1038 [1985]). At the same time, however, "[a] court must also be careful not to interpret a contracted indemnification provision in a manner that would render it meaningless" (Bradley, 8 NY3d at 274). In accordance with that principle, "[e]ffect and meaning must be given to every term of the contract . . . , and reasonable effort must be made to harmonize all of its terms" (Corter-Longwell v Juliano, 200 AD3d 1578, 1583 [4th Dept 2021] [internal quotation marks omitted]). Critical to the issue on appeal, when all the terms of a contractual indemnification provision are given effect and meaning, the language may establish that indemnification is required even in the absence of a finding of negligence or fault on the part of the indemnitor (see e.g. Bradley, 8 NY3d at 275; Brown v Two Exch. Plaza Partners, 76 NY2d 172, 178 [1990]; see generally Margolin, 32 NY2d at 153).
Here, in pertinent part, the indemnification provision provided that NJS would "indemnify and hold harmless" BN "against any and all claims, actions, demands, liabilities, losses, damages, judgments, settlements, costs and expenses (including reasonable attorneys' fees and expenses) brought about by any person" insofar as such aforementioned items "arise out of or are based on," inter alia, NJS's "breach of th[e] [a]greement" or of any of the warranties NJS made therein. Construing the language in the appropriate manner, we conclude that "[t]he agreement does not condition the indemnification of [BN] upon a finding that [NJS] was negligent or at fault" (Tanksley v LCO Bldg. LLC, 196 AD3d 1037, 1038 [4th Dept 2021]; see Bradley, 8 NY3d at 275). Instead, "[t]his is a clear and unambiguous indemnity provision that does not, despite [NJS's] argument to the contrary, require a finding of 'active negligence' or fault on the part of [NJS]" (Karwowski v 1407 Broadway Real Estate, LLC, 160 AD3d 82, 88 [1st Dept 2018]).
More particularly, we agree with BN that NJS's obligation to indemnify BN against all "claims" and "actions" that "arise out of" NJS's breach of the agreement or of the warranties therein does not require a finding of an actual breach. As a general matter, the phrase "arising out of" has been interpreted by the Court of Appeals to mean "originating from, incident to, or having connection with" (Worth Constr. Co., Inc. v Admiral Ins. Co., 10 NY3d 411, 415 [2008] [internal quotation marks omitted]). Here, plaintiff's action has a connection with the agreement [*3]and the claimed breach thereof by NJS inasmuch as NJS represented and warranted in the agreement, among other things, that "all services w[ould] be performed in a competent and professional manner." Plaintiff alleged in her action that the floor—which was ultimately NJS's responsibility under the agreement—was not kept in a reasonably safe condition and, in fact, was in a defective, waxy, and slippery state. Thus, plaintiff's action originates from, is incident to, or has connection with a claimed breach of NJS's obligations under the agreement. Inasmuch as NJS—using "broad and all-inclusive language" (Margolin, 32 NY2d at 154)—agreed to indemnify BN against all claims or actions arising out of such a breach, we conclude that "the unambiguous intent of the clause was . . . to provide for indemnification even though [NJS] was not negligent" (ZRAJ Olean, LLC v Erie Ins. Co. of N.Y., 134 AD3d 1557, 1560 [4th Dept 2015], lv denied 29 NY3d 915 [2017]).
Similarly, NJS's obligation to indemnify BN against any "claims" insofar as such a claim is "based on" NJS's breach of the agreement or the warranties therein likewise does not require a finding of fault (see Bradley, 8 NY3d at 275). Pursuant to that language, there is no requirement in the indemnification provision that the claim successfully establish an actual breach, i.e., failure of NJS to maintain the floor competently and professionally, and, therefore, NJS's obligation is triggered regardless of whether fault can actually be established in the underlying action (see id.).
The indemnification provisions in the cases relied upon by NJS contain different language, and we conclude that those cases are distinguishable or otherwise inapposite (cf. JPMorgan Chase Bank, N.A. v Luxor Capital, LLC, 101 AD3d 575, 575-576 [1st Dept 2012]; DiStefano v Kmart Corp. Intl., 89 AD3d 459, 459 [1st Dept 2011], lv denied 19 NY3d 802 [2012]; Steuhl v Home Therapy Equip., Inc., 51 AD3d 1101, 1105 [3d Dept 2008]; Newman v Town of York, 140 AD2d 936, 937 [4th Dept 1988], lv dismissed 72 NY2d 952 [1988]). In sum, the indemnification provision here "expresse[s] an unmistakable intent that [NJS] indemnify [BN], regardless of whether either party is at fault or is found liable" (Gregware v City of New York, 132 AD3d 51, 64 [1st Dept 2015]; see e.g. Bradley, 8 NY3d at 274-275; Brown, 76 NY2d at 178; Tanksley, 196 AD3d at 1038; ZRAJ Olean, LLC, 134 AD3d at 1560).
NJS nonetheless contends that, even if BN is correct that a mere claim triggers the indemnification provision, plaintiff's "bare bones" allegations in this case were insufficient to trigger NJS's indemnity obligations. We reject that contention as well.
Plaintiff's complaint alleged that she was on the premises of the subject store when she fell and sustained personal injuries, and that such injuries were caused by the negligence of, among others, BN and its agents, in failing to maintain the premises in a reasonably safe condition and in creating a hazardous condition. To the extent that those allegations alone may not be sufficient to trigger NJS's indemnity obligation, notwithstanding that it was responsible for the maintenance of much of the store premises, we note that NJS's exclusive focus on those allegations is misplaced because, beyond a complaint, "a bill of particulars amplifies a pleading by setting forth in greater detail the nature of the allegations and what the party making them intends to prove" (Northway Eng'g v Felix Indus., 77 NY2d 332, 336 [1991]). Here, plaintiff's allegations, as amplified by her bills of particulars, clearly brought the claim within the indemnification provision inasmuch as plaintiff alleged that her injuries arose from the creation of a defective, waxy, and slippery condition on the floor—which NJS knew it was responsible for maintaining pursuant to the agreement—that was allowed to remain for an unreasonable length of time.
Next, with respect to BN's theory that it is entitled to contractual indemnification on the separate ground that NJS breached an obligation under the agreement to procure, or have its subcontractors procure, general liability insurance naming BN as an additional insured, NJS contends that the court should have granted its cross motion insofar as it sought summary judgment dismissing that claim as well as the cause of action for breach of contract against NJS. We agree with NJS, and we therefore modify the order accordingly.
Preliminarily, we note that the court "did not address that part of the motion for summary judgment" on the contractual indemnification cause of action insofar as it is based on NJS's alleged failure to procure, or have its subcontractors procure, proper insurance, and "the failure to rule on that part of the motion is deemed a denial thereof" (Utility Servs. Contr., Inc. v Monroe County Water Auth., 90 AD3d 1661, 1662 [4th Dept 2011], lv denied 19 NY3d 803 [2012]; see [*4]Brown v U.S. Vanadium Corp., 198 AD2d 863, 864 [4th Dept 1993]).
With regard to the merits, "[a] party seeking summary judgment based on an alleged failure to procure insurance naming that party as an additional insured must demonstrate that a contract provision required that such insurance be procured and that the provision was not complied with" (Corter-Longwell, 200 AD3d at 1580 [internal quotation marks omitted]). Moreover, " '[a] provision in a . . . contract cannot be interpreted as requiring the procurement of additional insured coverage unless such a requirement is expressly and specifically stated. In addition, contract language that merely requires the purchase of insurance will not be read as also requiring that a . . . party be named as an additional insured' " (id. at 1581).
Here, with respect to NJS's alleged breach of its direct obligation to procure insurance naming BN as an additional insured, BN failed to meet its burden on its motion and, instead, NJS met its burden on its cross motion of establishing entitlement to summary judgment as a matter of law. Notably, BN does not contend otherwise on appeal. The insurance provision of the agreement provided that "[NJS] agrees to obtain and maintain at all times while this [a]greement remains in effect . . . General Liability Insurance with minimum limits of $5,000,000, on an occurrence form basis" which "shall protect [NJS] and [BN] and each subsidiary or affiliate of [BN] from claims for personal injury (including bodily injury and death), intellectual property and other property damage." NJS also agreed to furnish certificates of insurance, which would include BN as an additional insured. The record establishes that NJS complied with that obligation inasmuch as BN's own submissions contain NJS's insurance policy, which included a blanket additional insured endorsement covering parties that NJS had contractually agreed to name as additional insureds (see Payne v NSH Community Servs., Inc., 203 AD3d 546, 548 [1st Dept 2022]; Perez v Morse Diesel Intl., Inc., 10 AD3d 497, 498 [1st Dept 2004]).
With respect to BN's assertion that NJS was required by the agreement to ensure that its subcontractors procure insurance naming BN as an additional insured, we conclude that BN's assertion lacks merit because there is no provision in the agreement "expressly and specifically" requiring that NJS's subcontractors obtain insurance naming BN as an additional insured (Corter-Longwell, 200 AD3d at 1581). The insurance provision quoted above requires NJS to procure insurance naming BN as an additional insured, but it does not state, as other contracts do, that NJS and its subcontractors shall maintain insurance in favor of BN (cf. e.g. id.). In support of its assertion, BN falls back on an entirely different provision of the agreement governing subcontracting, which provides in relevant part that "[NJS] shall be responsible for all its obligations and responsibilities hereunder, and [NJS] shall be responsible for all acts or omissions of its subcontractors." Contrary to BN's assertion, the provision that NJS is responsible for "all acts or omissions of its subcontractors," without more, does not constitute language " 'expressly and specifically' " stating a requirement that NJS's subcontractors procure insurance naming BN as an additional insured (id.). "Absent any express and specific language requiring that [BN] be named as an additional insured" on the subcontractor's policies, the agreement does not require that NJS ensure that its subcontractors procure additional insured coverage in favor of BN (Clavin v CAP Equip. Leasing Corp., 156 AD3d 404, 405 [1st Dept 2017]).
In addition, as NJS contends and BN effectively concedes, NJS is entitled to summary judgment dismissing BN's cause of action for common-law indemnification from NJS. We therefore further modify the order accordingly. " 'The principle of common-law, or implied indemnification, permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party' " (Genesee/Wyoming YMCA v Bovis Lend Lease LMB, Inc., 98 AD3d 1242, 1244 [4th Dept 2012]). Here, BN has not been, and will not be, compelled to pay for the wrong of another inasmuch as plaintiff's complaint was dismissed on summary judgment and we have affirmed that order (see Olivieri, 203 AD3d at 1589-1590). In addition, entitlement to common-law indemnification requires that the proposed indemnitor be guilty of some negligence that contributed to the causation of the accident and, here, the affirmed order dismissing plaintiff's complaint forecloses any finding that NJS's negligence contributed to the accident (see Grove v Cornell Univ., 151 AD3d 1813, 1816-1817 [4th Dept 2017]).
Finally, we agree with NJS that it is entitled to summary judgment dismissing all cross claims against it, and we therefore further modify the order accordingly.
Entered: August 4, 2022
Ann Dillon Flynn
Clerk of the Court