*40
 
 OPINION OF THE COURT
 

 Graffeo, J.
 

 In this products liability case, defendants — a product manufacturer and retailer — were granted summary judgment dismissing plaintiffs’ complaint. Because we conclude that plaintiffs raised a triable issue of fact concerning whether a defective refrigerator caused the fire that resulted in plaintiffs’ injuries, we reverse and reinstate the complaint against these defendants.
 

 Plaintiffs’ decedent Sandra Speller died in a house fire that also injured her seven-year-old son. It is undisputed that the fire originated in the kitchen. Plaintiffs commenced this action against Sears, Roebuck and Co., Whirlpool Corporation and the property owner alleging negligence, strict products liability and breach of warranty.
 
 *
 
 Relevant to this appeal, plaintiffs asserted that the fire was caused by defective wiring in the refrigerator, a product manufactured by Whirlpool and sold by Sears.
 

 After discovery, defendants Sears and Whirlpool moved for summary judgment seeking dismissal of the complaint. Relying principally on a report issued by the New York City Fire Marshal, defendants rejected the refrigerator as the source of the fire, instead contending that a stovetop grease fire was the cause of the conflagration. Thus, they argued that their product was outside the chain of causation that resulted in plaintiffs’ damages.
 

 In opposition to defendants’ motion for summary judgment, plaintiffs submitted excerpts from the depositions of two experts and an affidavit from a third, as well as other materials. Plaintiffs’ experts refuted the conclusions reached in the Fire Marshal’s report, opining that the fire started in the upper right quadrant of the refrigerator, an area with a concentration of electrical wiring. All three rejected the stove as the source of the fire. Plaintiffs also submitted portions of the deposition of a Whirlpool engineer retained as an expert by defendants. Although the engineer disputed that the fire originated in the refrigerator, he acknowledged that a fire would not occur in a refrigerator unless the product was defective.
 

 
 *41
 
 Supreme Court denied defendants’ request for summary judgment, holding that plaintiffs’ submissions raised a triable issue of fact as to whether the fire was caused by a defect in the refrigerator. The Appellate Division reversed and granted the motion, dismissing the complaint as against Sears and Whirlpool. The Court reasoned that defendants’ evidence suggesting an alternative cause of the fire shifted the burden to plaintiffs to come forward with specific evidence of a defect. Characterizing the submissions of plaintiffs’ experts as “equivocal,” the Court concluded that plaintiffs failed to satisfy their burden of proof to withstand summary judgment. (294 AD2d 349, 350 [2002].) This Court granted plaintiffs leave to appeal.
 

 A party injured as a result of a defective product may seek relief against the product manufacturer or others in the distribution chain if the defect was a substantial factor in causing the injury. “A product may be defective when it contains a manufacturing flaw, is defectively designed or is not accompanied by adequate warnings for the use of the product”
 
 (Liriano v Hobart Corp.,
 
 92 NY2d 232, 237 [1998];
 
 Robinson v Reed-Prentice Div. of Package Mach. Co.,
 
 49 NY2d 471, 478 [1980]).
 

 In this case, plaintiffs’ theory was that the wiring in the upper right quadrant of the refrigerator was faulty, causing an electrical fire which then spread to other areas of the kitchen and residence. Because that part of the refrigerator had been consumed in the fire, plaintiffs noted that it was impossible to examine or test the wiring to determine the precise nature of the defect. Thus, plaintiffs sought to prove their claim circumstantially by establishing that the refrigerator caused the house fire and therefore did not perform as intended.
 

 New York has long recognized the viability of this circumstantial approach in products liability cases. Indeed its origins can be traced back to
 
 Codling v Paglia
 
 (32 NY2d 330, 337 [1973]), where this Court stated that a plaintiff “is not required to prove the specific defect” and that “[p]roof of necessary facts may be circumstantial.” In order to proceed in the absence of evidence identifying a specific flaw, a plaintiff must prove that the product did not perform as intended and exclude all other causes for the product’s failure that are not attributable to defendants
 
 (Halloran v Virginia Chems.,
 
 41 NY2d 386, 388 [1977];
 
 see generally
 
 Kreindler, Rodriguez, Beekman and Cook, New York Law of Torts § 16.64, at 519-522 [15 West’s NY Prac Series 1997]). In this regard, New York law is consistent with the Restatement, which reads:
 

 
 *42
 
 “It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
 

 “(a) was of a kind that ordinarily occurs as a result of product defect; and
 

 “(b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution” (Restatement [Third] of Torts: Products Liability § 3 [1998]).
 

 Of course, if a plaintiffs proof is insufficient with respect to either prong of this circumstantial inquiry, a jury may not infer that the harm was caused by a defective product unless plaintiff offers competent evidence identifying a specific flaw
 
 (see Shelden v Hample Equip. Co.,
 
 59 NY2d 618 [1983],
 
 affg
 
 89 AD2d 766 [3d Dept 1982]).
 

 Here, in their motion for summary judgment, defendants focused on the second prong of the circumstantial inquiry, offering evidence that the injuries were not caused by their product but by an entirely different instrumentality — a grease fire that began on top of the stove. This was the conclusion of the Fire Marshal who stated during deposition testimony that his opinion was based on his interpretation of the burn patterns in the kitchen, his observation that one of the burner knobs on the stove was in the “on” position, and his conversation with a resident of the home who apparently advised him that the oven was on when the resident placed some food on the stovetop a few hours before the fire.
 

 In order to withstand summary judgment, plaintiffs were required to come forward with competent evidence excluding the stove as the origin of the fire. To meet that burden, plaintiffs offered three expert opinions: the depositions of an electrical engineer and a fire investigator, and the affidavit of a former Deputy Chief of the New York City Fire Department. Each concluded that the fire originated in the refrigerator and not on the stove.
 

 In his extensive deposition testimony, the electrical engineer opined that the fire started in the top-right-rear corner of the refrigerator, an area that housed the air balancing unit, thermostat, moisture control and light control. He stated that the wiring in this part of the appliance had been destroyed in the fire, making it impossible to identify the precise mechanical failure and, thus, he could only speculate as to the specific
 
 *43
 
 nature of the defect. He testified that the “most logical probability” was that a bad connection or bad splice to one of the components in that portion of the unit caused the wire to become “red hot” and to ignite the adjacent plastic. He tested the combustibility of the plastic and confirmed that the “plastic lights up very easily, with a single match” and continues to burn like candle wax. The engineer observed that the doors of the refrigerator were “slightly bellied out,” indicating they were blown out from the expanding hot gases inside the refrigerator. The wall behind the refrigerator was significantly damaged and the upper right quadrant was burned to such a degree that it was not likely to have been caused by an external fire. Interpreting the burn patterns differently from the Fire Marshal, the electrical engineer found that the cabinets above the stove, although damaged, were not destroyed to the extent he expected to find if there had been a stovetop grease fire.
 

 Plaintiffs’ fire investigator similarly opined that the fire originated in the refrigerator’s upper right comer, in part basing his conclusion on his observations of the scene three days after the fire and his examination of the appliances. He also interviewed a witness to the fire. He testified that he eliminated the stove as the source of the fire after his examination of that appliance and the cabinets above it. Contrary to the testimony of the Fire Marshal, he observed that all of the burner knobs on the stove were in the same position, either all “off’ or all “on.” He further examined the burn patterns, noting that if the blaze had been caused by a grease fire on the stove, the cabinets directly above would have been consumed in the fire. Instead, they were merely damaged. He acknowledged that he did not know exactly how the fire started inside the refrigerator but indicated he suspected there had been a poor connection in the wiring that caused the wire to smolder until it ignited the highly combustible foam insulation inside the unit.
 

 The former Deputy Chief of the New York City Fire Department asserted in his affidavit that the “fire damage to the area around the refrigerator when compared to that of the stove clearly shows the longer and heavier burn at the refrigerator,” indicating the fire originated there. He also stated that he had ruled out all other possible origins of the fire.
 

 Upon review of these expert depositions and affidavit, we conclude that plaintiffs raised a triable question of fact by offering competent evidence which, if credited by the jury, was sufficient to rebut defendants’ alternative cause evidence. In other words, based on plaintiffs’ proof, a reasonable jury could conclude that plaintiffs excluded all other causes of the fire.
 

 
 *44
 
 We therefore disagree with the Appellate Division’s characterization of plaintiffs’ submissions as equivocal. Plaintiffs’ experts consistently asserted that the fire originated in the upper right quadrant of the refrigerator and each contended the stove was not the source of the blaze. Both parties supported their positions with detailed, nonconclusory expert depositions and other submissions which explained the bases for the opinions.
 

 Defendants contend that after they came forward with evidence suggesting an alternative cause of the fire, plaintiffs were foreclosed from establishing a product defect circumstantially but were then required to produce evidence of a specific defect to survive summary judgment. We reject this approach for two reasons. First, such an analysis would allow a defendant who offered minimally sufficient alternative cause evidence in a products liability case to foreclose a plaintiff from proceeding circumstantially without a jury having determined whether defendant’s evidence should be credited. Second, it misinterprets the court’s role in adjudicating a motion for summary judgment, which is issue identification, not issue resolution. Where causation is disputed, summary judgment is not appropriate unless “only one conclusion may be drawn from the established facts”
 
 (Kriz v Schum,
 
 75 NY2d 25, 34 [1989]). That is not the case here where plaintiffs directly rebutted defendants’ submissions with competent proof specifically ruling out the stove as the source of the blaze. Because a reasonable jury could credit this proof and find that plaintiffs excluded all other causes of the fire not attributable to defendants, this case presents material issues of fact requiring a trial.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the motion of defendants Sears, Roebuck and Co. and Whirlpool Corporation for summary judgment denied.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Read concur.
 

 Order reversed, etc.
 

 *
 

 This action has been joined with a subrogation action commenced by Prudential Insurance Co., the homeowner’s insurer, against Sears and Whirlpool for purposes of trial only. The Prudential action is not before us on this appeal.