■ JOSE RAMIREZ et al., Respondents, v MARK MILLER et al., Defendants, and NAPCO SECURITY GROUP AND ALARM LOCK SYSTEMS, INC., Appellant. [814 NYS2d 148]—

Order, Supreme Court, Bronx County (Allison Tuitt, J.), entered July 15, 2005, which denied the motion of defendant Napco Security Group and Alarm Lock Systems, Inc. (Napco) for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant Napco dismissing the complaint as against it.

Defendant Napco is a manufacturer of alarm locks and "panic bar" devices used on egress doors in residential buildings.

On November 5, 1999, a fire occurred in a six-floor residential building located at 255 West 23rd Street in Manhattan. The fire originated in the first-floor apartment of defendant Mark T. Miller. Miller informed plaintiff Jose Ramirez, who was working as a doorman at the building's front desk, of the fire. Ramirez and Miller returned to Miller's apartment, where Ramirez observed the fire. Ramirez told Miller to get out of the building, and took the elevator to the sixth floor. Ramirez, driven by the escalating fire, ultimately took the stairs directly to the roof, where he attempted to exit through the east egress door of the West 23rd Street building.

The door to the roof had a push bar and an alarm manufactured by defendant Napco. It could be opened with a key. Plaintiff Ramirez tried the push bar a few times but the door would not open. He tried to retrieve his key to unlock the door, but "wasn't pushing it in the right place" or "couldn't get the key in." Plaintiff tried the push bar again but was unable to open the door. He went back to the third floor and exited onto a window ledge. Plaintiff was blown back into the building by a fire blast and lost consciousness. He sustained second- and third-degree burns and other injuries.

Before the fire, the building superintendent had informed plaintiff that building management was going to "temporarily close the roof" because someone was throwing stones from the roof. At some point before the fire, the lock cylinder on the roof door was changed by the building manager. It is uncontested

that defendant Napco did not perform any work on the push bar and lock prior to the fire.

Thereafter, tenants complained to plaintiff about not being able to go on the roof. Prior to that time, every shareholder had access to the roof using the same door key that operated the entry door to the apartment complex. However, once the cylinders were changed, the roof could still be accessed by pushing the panic bar in the event of an emergency. An agent of defendant building manager testified that he had not observed anyone using the panic bar after the cylinders were changed. He further testified that the building superintendent did not have difficulty using the key for the roof door when the two went up to the roof in connection with the stone-throwing incident.

David Shear, a shareholder and member of the defendant Chelsea Garden Owners Corp. board of directors, testified that employees of the roof contractor worked on the roof five days a week, eight hours per day, for approximately two months. The workers carried materials up to and down from the roof. They obtained access to the roof through the roof door. When Shear checked on the work in progress, he used his roof door key "once or twice." The other times he found the door wedged open with a small piece of wood. He never experienced difficulty opening the roof door. No one from the building or any of the contractor's employees complained to him about difficulties opening the door.

Rollin Seduat, a locksmith and door mechanic for Abbey Locksmith, rehung the roof egress doors after the fire. Seduat testified that he removed a damaged and distorted "detex" alarm lock from the door and threw it in the corner. He then mounted a new alarm lock product onto the door. Seduat did not test the function of the damaged alarm lock prior to removing it from the door. Photographs of the lock were taken by an agent of the plaintiff after the fire and its removal from the door. No expert examined the lock and push bar, and its whereabouts are now unknown.

Defendant Napco moved for summary judgment on the grounds of spoliation and that plaintiffs could not make out a prima facie case of either negligence or strict products liability. Napco relied on the affidavit of Allen C. Eberhardt, Ph.D., its consulting engineer. Eberhardt based his opinions on review, inter alia, of an exemplar of the alarm lock product at issue, together with its accompanying literature, specifications and the applicable industry standards, and the existing photographs of the subject device. Eberhardt stated that the Alarm Lock

electronic panel lock model 250 was not defective in its design and that there was no evidence that the product left the manufacturer with any manufacturing defects. He further stated that, in his opinion, the alarm lock was in working order since the deadbolt was capable of retracting, as shown in the photographs, which was accomplished either by pressing the panic bar or using the key, and that the few mechanical components that accomplished the retraction of the deadbolt were simple, sturdy and reliable.

Eberhardt stated that there were other "equally plausible" scenarios in which plaintiff's egress would have been impeded, none of which could be ruled out. They included an intentional modification to the alarm lock which prevented the clapper plate (the panic bar) from retracting the deadbolt; the jamming of an object such as a wooden stick between the clapper plate and the face of the door, preventing the clapper plate from moving; the placement of an object into the space where the door met the doorframe, preventing the door from opening; or the placement of a large or heavy object on the other side of the door, preventing the door from opening.

Plaintiffs failed to submit any expert testimony in opposition to the motion. Because we believe that plaintiffs have failed to make out a prima facie case against defendant Napco, we need not consider the question of spoliation.

In this circumstantial case, plaintiff was required to prove that the lock did not perform as intended and to exclude causes for the lock's failure not attributable to defendant (*see Speller v Sears, Roebuck & Co.*, 100 NY2d 38, 41 [2003]). In support of its motion for summary judgment, Napco relied on the affidavit of an expert who had examined an exemplar device and concluded that the product was not defective in its design and that there was no evidence of a manufacturing defect. The expert stated that the fact that postaccident photographs showed the lock in a retracted position meant that the lock was in working order since it was capable of being retracted by either a key or the panic bar. He further stated that there were plausible causes of the product's failure not involving negligence by defendant that could not be ruled out, namely, a modification to the alarm lock that prevented the panic bar from retracting the deadbolt, or the placement of an object between the panic bar and the door or where the door met the doorframe, or on the opposite side of the door.

Shear, the shareholder-board member, testified that when he went to the roof to inspect the work in progress, he found that the workers had wedged the door open with a small piece of

wood. The property manager confirmed that the locks to the roof egress door had been changed shortly before the fire, and that he did not know whether changing the cylinder had deactivated the panic bar in some manner.

In response, plaintiffs were required to come forth with competent evidence raising a triable issue as to whether other causes for the product's failure could be excluded. Plaintiffs failed to do so. Plaintiffs relied solely upon the affirmation of their own attorney who deemed Napco's expert's theories "remote," "speculative" and "incredible," without rebutting those theories by means of expert affidavit.

As an initial matter, plaintiffs do not even address the defense expert's first scenario, that a modification of the alarm lock device may have prevented the panic bar from retracting the deadbolt. This scenario is not "incredible" in light of the record evidence that the cylinders in the egress doors had been changed in the months prior to the fire and the property manager's testimony that he was not sure if doing so had deactivated the panic bar. Plaintiffs deem the second, third and fourth scenarios "incredible" because the placement of any obstacle in the doorframe would prevent whoever had placed the obstacle from entering the building through the very door he or she had blocked. However, the roof had both east and west egress doors. Blocking the east door would thus not prevent a person from reentering the building through the west door. It is plausible that workers may have blocked one of the doors in light of concerns, set forth in the record, about restricting roof access following the stone-throwing incident. Plaintiffs thus have failed to raise a triable issue of fact, by means of competent evidence, sufficient to rebut Napco's alternative cause evidence (*cf. Speller, supra*). Concur—Andrias, J.P., Sullivan, Williams, Gonzalez and Catterson, JJ.