[885 NE2d 176, 855 NYS2d 412]

John Ramos, Respondent, v Howard Industries, Inc., Appellant.

Argued February 6, 2008; decided March 13, 2008

## POINTS OF COUNSEL

*Connors & Vilardo, LLP,* Buffalo (*Lawrence J. Vilardo* and *Giuseppe A. Ippolito* of counsel), and *Law Offices of Walter R. Pacer, Jr.* (*James D. Schultz, Jr.,* of counsel), for appellant. I. In a products liability case where the product is not available, defendant shows its prima facie entitlement to summary judgment by demonstrating that the product was defect free when it left defendant's control. (*Zuckerman v City of New York,* 49 NY2d 557; *Wesp v Carl Zeiss, Inc.,* 11 AD3d 965; *Maciarello v Empire Comfort Sys.,* 16 AD3d 1009; *Speller v Sears, Roebuck & Co.,* 100 NY2d 38; *Halloran v Virginia Chems.,* 41 NY2d 386.) II. Because defendant met its burden of establishing prima facie entitlement to summary judgment, plaintiff's failure to exclude all causes other than a manufacturing defect entitled defendant to summary judgment. (*Zuckerman v City of New York,* 49 NY2d 557; *Wesp v Carl Zeiss, Inc.,* 11 AD3d 965; *Speller v Sears, Roebuck & Co.,* 100 NY2d 38; *Halloran v Virginia Chems.,* 41 NY2d 386; *Gonzalez v 98 Mag Leasing Corp.,* 95 NY2d 124; *Amatulli v Delhi Constr. Corp.,* 77 NY2d 525; *Santoni v Bertelsmann Prop., Inc.,* 21 AD3d 712; *Curiale v Sharrotts Woods, Inc.,* 9 AD3d 473; *Terry v Erie Foundry Co.,* 235 AD2d 414; *Gern v Basta,* 26 AD3d 807, 6 NY3d 715.)

*Cantor, Lukasik, Dolce & Panepinto, P.C.,* Buffalo (*Stephen C. Halpern* of counsel), for respondent. I. The court below correctly ruled that defendant did not meet its burden in seeking summary judgment because it tried to meet that burden by advancing alternative theories of causation and then failed to submit evidence in admissible form supporting those theories. (*Taft v Sports Page Shop,* 226 AD2d 974; *Graham v Pratt & Sons,* 271 AD2d 854; *Peris v Western Regional Off-Track Betting Corp.,* 255 AD2d 899; *Speller v Sears, Roebuck & Co.,* 100 NY2d

38; *Riglioni v Chambers Ford Tractor Sales, Inc.,* 36 AD3d 785; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *Levitt v County of Suffolk,* 145 AD2d 414; *Baly v Chrysler Credit Corp.,* 94 AD2d 781; *Coley v Michelin Tire Corp.,* 99 AD2d 795; *Narciso v Ford Motor Co.,* 137 AD2d 508.) II. Contrary to defendant's argument, where the product is missing, plaintiff does not have the burden to exclude all other possible causes *at the summary judgment phase,* but rather must only raise questions of fact. (*Speller v Sears, Roebuck & Co.,* 100 NY2d 38; *Kriz v Schum,* 75 NY2d 25; *Saunders v Farm Fans, div. of ffi Corp.,* 24 AD3d 1173; *Halloran v Virginia Chems.,* 41 NY2d 386.) III. Defendant proposes new standards for a manufacturer to meet on summary judgment where the product is missing. Those new standards would alter the existing criteria established by this Court in *Speller v Sears, Roebuck & Co.* (100 NY2d 38 [2003]), conflate the proof needed to prove a design versus a manufacturing defect, and advance requirements which defendant's own affidavits do not meet. (*Jemmott v Rockwell Mfg. Co., Power Tools Div.,* 216 AD2d 444; *McCarthy v Olin Corp.,* 119 F3d 148; *Gian v Cincinnati Inc.,* 17 AD3d 1014; *Lamb v Kysor Indus. Corp.,* 305 AD2d 1083; *Maciarello v Empire Comfort Sys.,* 16 AD3d 1009; *Wesp v Carl Zeiss, Inc.,* 11 AD3d 965; *Bauer v Bashline Indus.,* 219 AD2d 841; *Hunter v Ford Motor Co.,* 37 AD2d 335.) IV. Even if this Court rules that defendant met its burden in moving for summary judgment, plaintiff met his responsive burden when his expert addressed each of defendant's theories of alternative causation and raised questions of fact about each one. (*Speller v Sears, Roebuck & Co.,* 100 NY2d 38; *Kriz v Schum,* 75 NY2d 25; *Abato v Millar El. Serv. Co.,* 261 AD2d 873; *Regelski v Weber,* 209 AD2d 965; *Luthart v Danesh,* 201 AD2d 930; *Cooper v City of Rochester,* 16 AD3d 1117; *Salva v Blum,* 277 AD2d 985; *Hart v Bruno Mach. Corp.,* 250 AD2d 58.) V. Plaintiff's expert affidavit is founded on a valid evidentiary basis, including the testimony of eyewitnesses to the explosion, an analysis of the tests performed by defendant, and industry data on the frequency and causes of transformer explosions. (*Curiale v Sharrotts Woods, Inc.,* 9 AD3d 473; *Amatulli v Delhi Constr. Corp.,* 77 NY2d 525; *Romano v Stanley,* 90 NY2d 444; *Torres v W.J. Woodward Constr., Inc.,* 32 AD3d 847; *Rutherford v Signode Corp.,* 11 AD3d 922; *Canales v Hustler Mfg. Co.,* 12 AD3d 392; *Browne v Big V Supermarkets,* 188 AD2d 798, 81 NY2d 708; *Castro v Delta Intl. Mach. Corp.,* 309 AD2d 827; *Speller v Sears, Roebuck & Co.,* 100 NY2d 38.) VI. Even if this Court concludes that (1) defen-

dant met its burden in moving for summary judgment and (2) plaintiff's expert affidavit has no validity, there still are questions of fact in the record about the cause of the transformer explosion that require this Court to deny summary judgment.

## OPINION OF THE COURT

Pigott, J.

In this products liability action, defendant manufacturer was denied summary judgment dismissing plaintiff's complaint. Because we conclude that defendant met its initial burden by presenting competent evidence that its product was not defective and plaintiff failed to create an issue of fact excluding all other causes for the product's failure not attributable to defendant, we reverse the Appellate Division order and dismiss the complaint.

In June 1997, plaintiff John Ramos sustained personal injuries when a transformer designed and manufactured by defendant Howard Industries, Inc. allegedly exploded. According to plaintiff, the explosion occurred shortly after he energized the transformer in the course of his employment as a lineman for nonparty Niagara Mohawk Power Corporation. Initially, plaintiff reported to his employer and doctors that he was injured when he reached out of an aerial bucket while installing the transformer on a utility pole. More than two years later, however, plaintiff claimed that the transformer exploded, the force of which caused him to fall inside the bucket, injuring his back. By that time, the transformer could not be located for inspection or testing to determine the cause of its failure. Plaintiff explained that he failed to promptly disclose the transformer explosion because he feared disciplinary action or the loss of certain employment-related benefits.

In May 2000, plaintiff commenced this products liability action, alleging that the transformer was defectively designed and manufactured. Following discovery, defendant moved for summary judgment dismissing the complaint. In support of its motion, defendant submitted the affidavit of an expert engineer who, after visiting defendant's plant, concluded that its manufacturing processes, quality control, testing and inspection were "current and state-of-the-art." The expert noted that an internal electrical fault could cause an explosion as described by plaintiff, but concluded that such a defect "would have been readily identified at several stages of the manufacturing process." He stated that, "[g]iven the various stages of testing and

inspection, it [was] virtually impossible for a transformer with an internal fault to leave [defendant's] plant." The expert also concluded that defendant's manufacturing processes complied with all applicable industry standards and Niagara Mohawk's specifications, and that the transformer in question would have been individually tested to ensure compliance with such requirements. He posited other possible causes of the explosion, such as Niagara Mohawk employees negligently rewiring or rebuilding the transformer, or the potential creation of "an internal fault" during rewiring by dropping a metal object inside the transformer, "which could cause the transformer to overheat the insulating oil within the tank and result in the cover being forced off the transformer."

In opposition to defendant's motion, plaintiff offered the affidavit of an expert engineer, who asserted that the transformer was defectively designed and manufactured because it "experienced an internal electrical fault due to defective coil/windings and/or insulation." Plaintiff's expert further stated that the "electrical fault generated excessive heat within the transformer's tank and superheated the oil contained therein" causing "excessive internal vapor pressure to build up, and ultimately produced the explosion." The expert also asserted that two safety devices placed on the transformer by defendant failed to operate and prevent the explosion. In addition, the expert rejected the theories presented by defendant to explain the explosion other than a manufacturing defect.

Supreme Court denied defendant's motion for summary judgment. It concluded that, although defendant's expert's assertion that a defect in the transformer would have been readily identified during the manufacturing process "might be a sufficient statement to obtain Summary Judgment if other causes of the accident were excluded," here, "other possible causes of the accident have not been excluded by the Defendant in the first instance."

The Appellate Division, with one Justice dissenting, affirmed, but for different reasons than Supreme Court. The court held that defendant failed to meet its burden on summary judgment, concluding that its evidence "does not establish as a matter of law that the transformer was not defective and that a manufacturing defect therefore did not cause the explosion" (38 AD3d 1163, 1164 [4th Dept 2007]). That court thereafter granted defendant leave to appeal and certified the following question: "Was the order of this Court, entered March 16, 2007, properly

made[?]" We answer the question in the negative, reverse the order of the Appellate Division and grant defendant's motion for summary judgment dismissing the complaint.

It is well settled that a products liability cause of action may be proven by circumstantial evidence, and thus, a plaintiff need not identify a specific product defect (see Speller v Sears, Roebuck & Co., 100 NY2d 38, 41 [2003]; Halloran v Virginia Chems., 41 NY2d 386, 388 [1977]; Codling v Paglia, 32 NY2d 330, 337 [1973]). "In order to proceed in the absence of evidence identifying a specific flaw, a plaintiff must prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants" (Speller, 100 NY2d at 41, citing Halloran, 41 NY2d at 388 [other citation omitted]). If, however, a plaintiff is unable to prove both elements, "a jury may not infer that the harm was caused by a defective product unless plaintiff offers competent evidence identifying a specific flaw" (Speller, 100 NY2d at 42).

In Speller, the plaintiffs alleged that a defective refrigerator caused a house fire. The manufacturer and retailer moved for summary judgment dismissing the complaint, offering evidence of an alternative cause of the fire, i.e., a stovetop grease fire. We stated that, "[i]n order to withstand summary judgment, plaintiffs were required to come forward with competent evidence excluding the stove as the origin of the fire" (id. at 42). Based on plaintiffs' three expert opinions, which concluded that the fire originated in the refrigerator and not from the stove, we held "that plaintiffs raised a triable question of fact by offering competent evidence which, if credited by the jury, was sufficient to rebut defendants' alternative cause evidence" (id. at 43). Put another way, we stated, "based on plaintiffs' proof, a reasonable jury could conclude that plaintiffs excluded all other causes of the fire" (id.).

Here, contrary to the Appellate Division's conclusion, defendant established its prima facie entitlement to judgment as a matter of law. Without the product available for testing and inspection (admittedly caused by plaintiff's lengthy delay in reporting the incident), defendant was unable to provide an expert opinion based upon an examination of the transformer. Instead, defendant presented competent evidence demonstrating that its transformers were designed and manufactured under state of the art conditions according to Niagara Mohawk's specifications and that its manufacturing process complied with applicable industry standards. The evidence further demon-

strated that each transformer was individually tested before leaving defendant's plant and that in light of such testing and inspection, its expert concluded that it was "virtually impossible for a transformer with an internal fault to leave [defendant's] plant." Defendant's expert affidavit also posited other possible causes of an explosion that may have been introduced while the transformer was rewired or rebuilt by Niagara Mohawk employees after it left defendant's possession.

Because defendant met its initial burden, in order to defeat summary judgment, plaintiff must raise "a triable question of fact by offering competent evidence which, if credited by the jury, [i]s sufficient to rebut defendant['s] alternative cause evidence" (*Speller*, 100 NY2d at 43). An expert's affidavit—offered as the only evidence to defeat summary judgment—"must contain sufficient allegations to demonstrate that the conclusions it contains are more than mere speculation and would, if offered alone at trial, support a verdict in the proponent's favor" (*Adamy v Ziriakus*, 92 NY2d 396, 402 [1998] [quoted case omitted]; *see also Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002] ["Where the expert's ultimate assertions are speculative or unsupported by any evidentiary foundation, . . . the opinion should be given no probative force and is insufficient to withstand summary judgment"]).

Plaintiff failed to present evidence excluding all other causes for the transformer's malfunction not attributable to defendant such that a reasonable jury could find that the transformer was defective in the absence of evidence of a specific defect. Although a plaintiff is not required to identify a specific defect in a circumstantial case, plaintiff's theory here—that the explosion resulted from a manufacturing defect in the form of an "internal electrical fault"—is pure speculation. Furthermore, as noted by the Appellate Division dissent, plaintiff's expert failed to exclude the possibility presented by defendant's expert that the transformer exploded because it was improperly rewired or rebuilt by Niagara Mohawk employees after leaving defendant's possession. In sum, based on plaintiff's proof, a reasonable jury could not conclude that all other causes of the transformer explosion were excluded, and thus, plaintiff's manufacturing defect claim fails as a matter of law.

Accordingly, the order of the Appellate Division should be reversed, with costs, defendant's motion for summary judgment dismissing the complaint granted and the certified question answered in the negative.

JONES, J. (dissenting). The issue before the Court is whether defendant Howard Industries, Inc. is entitled to summary judgment when the object of the products liability action was unavailable for inspection or testing. Because I think that this question should be answered in the negative, I respectfully dissent.

The majority relies on defendant's evidence, proffered by expert affidavit, that states that "its transformers were designed and manufactured under state of the art conditions" according to specifications and that "its manufacturing process complied with applicable industry standards" (majority op at 223). The majority also relies on statements "that each transformer was individually tested before leaving defendant's plant" and that it would be "virtually impossible for a transformer with an internal fault to leave [defendant's] plant" (*id.* at 224). In my view, this showing is insufficient to entitle defendant to judgment as a matter of law.

The available inference from defendant's bare assertions—that this transformer could not have left its plant with a defect—is purely speculative. Defendant's own expert conceded as much: "without *the* transformer to test and examine, there is simply no evidence or proof that [defendant] sold a transformer containing a defect."

Yet, defendant's experts proceeded to speculate as to possible causes of the explosion, of course, excluding a manufacturing defect. For example, they posited numerous theories: that a negligent worker could have "inadvertently cause[d] an internal short (fault) by permitting the wires to become kinked"; that a negligent worker could have dropped "an object such as a nut, metal tool or other conductive material" into the transformer; that the transformer may have been rebuilt by Niagara Mohawk; or that a negligent worker could have allowed rainwater to enter the transformer while it was being rewired.

Although the majority correctly states the law in its discussion of *Speller v Sears, Roebuck & Co.* (100 NY2d 38 [2003]), that case is distinguishable. After the defendant in *Speller* presented its theory of the cause of the house fire (i.e., grease fire began on top of kitchen stove), plaintiff, who had access to the refrigerator, kitchen and the stove, was able to come forward with competent evidence to exclude the stove as the origin of the fire (*see id.* at 42-43). With a finite number of potential causes of the fire, it was proper, in that case, to permit possible alternative causes to satisfy movant's initial burden and, indeed,

nonmovant's burden. In other words, each party in *Speller* benefitted by the factual scenario such that, on their respective burdens, each could proffer equally plausible, narrowing theories of causation adequate on a motion for summary judgment.

Here, on the other hand, defendant speculated as to possible causes of the transformer explosion which, according to its own experts, could not be established, while plaintiff was expected to exclude these very causes. The unique facts surrounding the unavailability of the transformer are equally disadvantageous, and neither party could definitively establish entitlement to judgment as a matter of law. Accordingly, the burden shifting exercise in this case is impractical, thus rendering these facts fundamentally unlike *Speller* (*cf. Speller*, 100 NY2d at 43). In sum, by giving credence to defendant's bare, obviously self-serving assertions that permit a weak inference of no defect, the result here unjustifiably disadvantages the nonmovant.

Accordingly, I would hold, as did the Appellate Division, that defendant failed to meet its burden, thus obviating the need to consider the adequacy of plaintiff's submissions in opposition.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge JONES dissents in a separate opinion.

Order reversed, etc.