# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**448**

**CA 14-01952**

PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, VALENTINO, AND WHALEN, JJ.

---

ALICE YARGEAU AND ANDREW YARGEAU,
PLAINTIFFS-APPELLANTS,

V                                                    MEMORANDUM AND ORDER

LASERTRON, CYBER SPORT MANUFACTURING, LLC AND
LT JOINT VENTURES, INC., DEFENDANTS-RESPONDENTS.

---

DOLCE PANEPINTO, P.C., BUFFALO (STEPHEN C. HALPERN OF COUNSEL), FOR
PLAINTIFFS-APPELLANTS.

PINSKY & SKANDALIS, P.C., SYRACUSE (GEORGE SKANDALIS OF COUNSEL), FOR
DEFENDANTS-RESPONDENTS LASERTRON AND LT JOINT VENTURES, INC.

KENNEY SHELTON LIPTAK NOWAK LLP, BUFFALO (MAURICE L. SYKES OF
COUNSEL), FOR DEFENDANT-RESPONDENT CYBER SPORT MANUFACTURING, LLC.

---

Appeal from an order of the Supreme Court, Erie County (Diane Y. Devlin, J.), entered April 4, 2014. The order, among other things, granted the respective motion and cross motion of defendants for summary judgment and dismissed plaintiffs' second amended complaint in its entirety against all defendants.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: Plaintiffs commenced this action alleging, inter alia, strict products liability and negligence causes of action and seeking damages for injuries allegedly sustained by Alice Yargeau (plaintiff) while participating in a game called Cyber Sport. Defendant Cyber Sport Manufacturing, LLC (Cyber Sport Manufacturing) designed and manufactured Cyber Sport, and plaintiff's incident occurred at a facility owned and operated by defendants Lasertron and LT Joint Ventures, Inc. Participants in Cyber Sport drive cars that are similar to bumper cars while they attempt to scoop a ball into a hand-held basket and then shoot the ball to score points. A player uses a joystick to move the car, but there are no brakes on the cars; the cars will stop moving when the joystick is released, or when a signal is sent by an employee of Lasertron. The record establishes that Cyber Sport had multiple incidents in the year and a half prior to plaintiff's accident in which a car would fail to stop when a referee pressed the signal. On the day of plaintiff's accident, plaintiff first rode in her car during a warm-up period, and she then sat in her car while listening to the referee give instructions to the

players.  The referee pressed the signal that was supposed to disable all of the cars, but at least one of the cars still had power and struck plaintiff's car from behind, allegedly resulting in injury to plaintiff.

Supreme Court properly granted the respective motion and cross motion of defendants seeking, inter alia, summary judgment dismissing the second amended complaint against them.  The court properly dismissed the negligence and strict products liability claims based on design defect against Lasertron and LT Joint Ventures because they established that they "did not design, manufacture or sell the allegedly defective product and thus could not be held liable for either negligence or strict products liability" resulting from the defect (*Townley v Emerson Elec. Co.*, 269 AD2d 753, 753), and plaintiffs failed to raise a triable issue of fact.  The court also properly dismissed those claims against Cyber Sport Manufacturing inasmuch as it established that the cars were reasonably safe (*see Kiersznowski v Gregory B. Shankman, M.D., P.C.*, 67 AD3d 1366, 1367; *see generally Ramos v Howard Indus., Inc.*, 10 NY3d 218, 223).  In support of its motion, Cyber Sport Manufacturing submitted the affidavit of its expert who averred that the cars were safe and operated within applicable standards.  He opined that the cars were not rendered unsafe by the remote shut-off's failure, noting that there was no accepted industry standard that mandated that a car must be totally inoperable during stoppage of play.  In opposition to Cyber Sport Manufacturing's motion, plaintiffs failed to raise a triable issue because their expert did not identify any violation of a safety standard or deviation from industry standards regarding the signal used by the employees to stop the cars (*see Kiersznowski*, 67 AD3d at 1367; *McAllister v Raymond Corp.*, 36 AD3d 768, 768-769).

We reject plaintiffs' contention that the court erred in dismissing the products liability claims based on failure to warn. " 'There is no duty to warn of an open and obvious danger of which the product user is actually aware or should be aware as a result of ordinary observation or as a matter of common sense' " (*Cwiklinski v Sears, Roebuck & Co., Inc.*, 70 AD3d 1477, 1479).  Here, the danger of being bumped from behind by another driver was an open and obvious danger in participating in Cyber Sport (*see Lauber v Sears, Roebuck & Co.*, 273 AD2d 922, 922).

We further conclude that the court also properly dismissed the negligence claims based on plaintiff's assumption of the risk.  Based on the " 'primary assumption' of risk" category of assumption of the risk, which is applicable here, participants in a sporting or recreational activity "properly may be held to have consented, by their participation, to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation" (*Turcotte v Fell*, 68 NY2d 432, 438-439; *see Custodi v Town of Amherst*, 20 NY3d 83, 88; *Close v Darien Lake Theme Park & Camping Resort, Inc.*, 96 AD3d 1445, 1445-1446).  Plaintiff may be held to have assumed those risks that are "inherent in and arise out of the nature of the sport generally" (*Morgan v State of New York*, 90 NY2d 471, 484; *see Custodi*,

20 NY3d at 88; *Cole v New York Racing Assn.*, 24 AD2d 993, 994, *affd* 17 NY2d 761).  "It is not necessary to the application of assumption of risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results" (*Maddox v City of New York*, 66 NY2d 270, 278; *see Anand v Kapoor*, 15 NY3d 946, 948; *Cook v Komorowski*, 300 AD2d 1040, 1041).

Here, plaintiff testified that, before the incident, she had seen the cars bumping each other.  She herself had struck a wall while driving her car and was also hit from behind.  She understood that bumping other cars was part of Cyber Sport, and she expected it.  Based on this evidence, the court properly determined that the risk of being bumped from behind, even during a stoppage in play, was a risk inherent in the game and that plaintiff assumed that risk (*see Cook*, 300 AD2d at 1041).

Entered:  May 1, 2015                        Frances E. Cafarell
                                             Clerk of the Court