Ford v Riina (2018 NY Slip Op 02894)





Ford v Riina


2018 NY Slip Op 02894


Decided on April 26, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 26, 2018

Renwick, J.P., Manzanet-Daniels, Tom, Andrias, Oing, JJ.


6383 805242/12

[*1]Catherine Ford, etc., Plaintiff-Appellant,
v
Howard Riina, M.D., et al., Defendants, Concentric Medical, Inc., Defendant-Respondent.


Danker Milstein, P.C., New York (Alexander J. Wulwick of counsel), for appellant.
Harris Beach PLLC, New York (Victoria A. Graffeo of counsel), for respondent.



Order, Supreme Court, New York County (George J. Silver, J.), entered on or about May 4, 2017, which granted the motion of defendant Concentric Medical, Inc. (Concentric) for summary judgment dismissing the complaint as against it, unanimously affirmed, without costs.
In this medical malpractice and products liability action, plaintiff Catherine Ford, as guardian of the person and property of her husband, seeks recovery for brain damage sustained by Mr. Ford during a procedure performed by defendant Dr. Howard Riina to treat a brain aneurysm after two V Series Merci Retriever devices, manufactured by Concentric, fractured.
Concentric established entitlement to dismissal of the duty to warn claim as its Instructions For Use specifically warned of the risk of fracture and how to reduce such risk (see Mulhall v Hannafin, 45 AD3d 55, 58 [1st Dept 2007]). Further, Dr. Riina acknowledged being aware of the risk of fracture through, inter alia, case reports, published literature, and the Instructions For Use (see Martin v Hacker, 83 NY2d 1, 9 [1993]).
"[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce" (Voss v Black & Decker Mfg. Co., 59 NY2d 102, 107 [1983] [internal quotation marks omitted]). Concentric established, via the submission of, inter alia, the affidavits of a bioengineer, a vascular neurologist, and an engineer, that the V Series Retriever was state of the art at the time of its design and complied with all applicable industry standards (see Ramos v Howard Indus., Inc., 10 NY3d 218, 223 [2008]; Wesp v Carl Zeiss, Inc., 11 AD3d 965, 967 [4th Dept 2004]). Furthermore, the risk-utility analysis of the device favors Concentric, as the Retriever was the only device on the market at the time that could mechanically remove clots and one of only three FDA-devices approved to remove foreign bodies, and had a low fracture rate of less than .25% (see Yun Tung Chow v Reckitt & Colman, Inc., 17 NY3d 29, 34 [2011]; Voss at 108-109).
To the extent that plaintiffs' experts' relied upon tests, for which the methodology was provided in only general terms, unsupported by analysis or data, the same was properly rejected by the motion court as lacking probative value (see Stalker v Goodyear Tire & Rubber Co., 60 AD3d 1173, 1175 [3d Dept 2009]). Plaintiffs' experts' opinions contained conclusory and speculative assertions as to the existence and nature of a defect (see Ramos at 224), and failed to [*2]explain how the proposed design changes, even if feasible, would have avoided the outcome here.
We have considered plaintiffs' remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 26, 2018
CLERK