Menear v Kwik Fill (2019 NY Slip Op 05845)





Menear v Kwik Fill


2019 NY Slip Op 05845


Decided on July 31, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 31, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, DEJOSEPH, TROUTMAN, AND WINSLOW, JJ.


104 CA 18-00548

[*1]TRUDY MENEAR AND CHARLES MENEAR, PLAINTIFFS-RESPONDENTS,
v
KWIK FILL, UNITED REFINING COMPANY, UNITED REFINING COMPANY, DOING BUSINESS AS KWIK FILL, HUSKY CORPORATION, DEFENDANTS-APPELLANTS, MOTOR COACH INDUSTRIES, INC., MOTOR COACH INDUSTRIES INTERNATIONAL, INC., MOTOR COACH INDUSTRIES, LTD., DEFENDANTS-RESPONDENTS, ET AL., DEFENDANTS. 






PULLANO & FARROW, ROCHESTER (CHRISTINA M. DEATS OF COUNSEL), FOR DEFENDANTS-APPELLANTS KWIK FILL, UNITED REFINING COMPANY, AND UNITED



 


 Appeals from an order of the Supreme Court, Onondaga County (Gregory R. Gilbert, J.), entered January 10, 2018. The order, insofar as appealed from, denied the motion of defendants Kwik Fill, United Refining Company and United Refining Company, doing business as Kwik Fill, for summary judgment and denied the motion of defendant Husky Corporation for summary judgment. 
It is hereby ORDERED that the order insofar as appealed from is reversed on the law without costs, the motions of defendants Kwik Fill, United Refining Company, and United Refining Company, doing business as Kwik Fill and defendant Husky Corporation are granted, and the complaints against those defendants are dismissed.
Memorandum: Defendants Kwik Fill, United Refining Company, and United Refining Company, doing business as Kwik Fill (collectively, Kwik Fill defendants) and defendant Husky Corporation (Husky) appeal from an order that, inter alia, denied their motions for summary judgment dismissing the complaints against them. We reverse the order insofar as appealed from, grant the motions, and dismiss the complaints against the Kwik Fill defendants and Husky.
On January 24, 2012, Trudy Menear (plaintiff), a limousine company employee, was driving a J4500 model bus manufactured by defendants Motor Coach Industries, Inc., Motor Coach Industries International, Inc., and Motor Coach Industries, Ltd. (collectively, Coach defendants). She stopped to refuel the bus at a gas station owned by the Kwik Fill defendants, pulled up to a diesel fuel dispenser, put the nozzle of the pump into the fuel tank, engaged the hold-open clip located on the nozzle, and waited while the bus refueled. Fuel began to spill out [*2]of the filler neck, i.e., the part that connects the gas cap to the fuel tank. She disengaged the hold-open clip, manually stopped the flow of fuel, and waited for the pressure to subside. After 20 or 30 seconds, she removed the nozzle, and diesel fuel ejected from the fuel tank, spraying her body, face, and eyes. Thereafter, plaintiffs commenced an action against the Kwik Fill defendants, and a separate action against, inter alia, Husky and the Coach defendants, seeking to recover damages for injuries that plaintiff sustained in the accident.
We agree with Husky, the manufacturer of the nozzle, that Supreme Court erred in denying its motion for summary judgment dismissing the complaint against it. An injured plaintiff may seek recovery against the manufacturer of a defective product on theories of strict products liability, negligence, or breach of express or implied warranty (see Voss v Black & Decker Mfg. Co., 59 NY2d 102, 106 [1983]). A strict products liability cause of action may be based upon theories of defective manufacture, defective design, or failure to warn (see id. at 106-107).
With respect to defective manufacture and design, Husky met its initial burden of establishing entitlement to judgment as a matter of law by submitting evidence that its product was not defective (see Ramos v Howard Indus., Inc., 10 NY3d 218, 221 [2008]; Cassatt v Zimmer, Inc., 161 AD3d 1549, 1550 [4th Dept 2018]), and that it was reasonably safe for its intended use (see generally Denny v Ford Motor Co., 87 NY2d 248, 257 [1995], rearg denied 87 NY2d 969 [1996]; Voss, 59 NY2d at 107). Particularly, Husky submitted an expert affidavit and the deposition testimony of its president. Husky's expert examined the nozzle, determined that the nozzle's automatic shut-off was functional, and opined that the nozzle was not unreasonably dangerous for its intended purpose and thus was not defective (see generally Voss, 59 NY2d at 107). Husky's president testified that its manufacturing processes complied with industry standards, and that every Husky nozzle was tested prior to leaving the factory (see generally Ramos, 10 NY3d at 223-224; Beechler v Kill Bros. Co., 170 AD3d 1606, 1607 [4th Dept 2019]).
The burden then shifted to the nonmovants to raise an issue of fact by submitting evidence of a specific flaw in the product (cf. Ramos, 10 NY3d at 223), or circumstantial evidence that the product did not perform as intended excluding all causes for the product's failure not attributable to Husky (see id. at 224; Johnson v Bauer Corp., 71 AD3d 1586, 1587 [4th Dept 2010]). In opposition to Husky's motion, the Coach defendants submitted the affidavit of an expert and the deposition testimony of the vice president of engineering of defendant Motor Coach Industries, Ltd. The expert opined that the accident was caused by a nozzle malfunction. He did not, however, identify any particular defect in the nozzle, which he did not inspect. We thus conclude that the expert's opinion is based on mere speculation and is insufficient to raise an issue of fact (see Ramos, 10 NY3d at 224). Furthermore, the vice president testified that, in 2007, the Coach defendants received complaints about diesel fuel ejecting from the filler necks on J4500 model buses due to apparent fuel tank venting and pressurization issues. As a result, the Coach defendants conducted an investigation, changed the vents, prepared a service bulletin, and developed a kit to retrofit existing J4500 model buses. The Coach defendants' expert failed to exclude improper venting and pressurization of the fuel tank as a potential cause of plaintiff's accident, and thus failed to raise an issue of fact in that regard (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
The remaining theories of liability against Husky also fail. Because Husky manufactured a product that was not defective, it had no duty to warn end users that its product might pose a danger if used to refuel an improperly vented fuel tank (see generally Rastelli v Goodyear Tire & Rubber Co., 79 NY2d 289, 298 [1992]). The negligence cause of action against Husky fails because "there is almost no difference between a prima facie case in negligence and one in strict [products] liability" (Preston v Peter Luger Enters., Inc., 51 AD3d 1322, 1325 [3d Dept 2008]; see generally Hokenson v Sears, Roebuck & Co., 159 AD3d 1501, 1502 [4th Dept 2018]). The breach of warranty causes of action against Husky are "coextensive with [the] tort based [causes of action]," and thus Husky is entitled to summary judgment dismissing those causes of action as well (Wyda v Makita Elec. Works, 232 AD2d 407, 408 [2d Dept 1996]; see Gian v Cincinnati Inc., 17 AD3d 1014, 1016 [4th Dept 2005]).
We agree with the Kwik Fill defendants that the court erred in denying their motion for summary judgment dismissing the complaint against them. Initially, plaintiffs concede that the action against the Kwik Fill defendants is based on a premises liability theory only. "Generally, a [*3]landowner owes a duty of care to maintain his or her property in a reasonably safe condition" (Gronski v County of Monroe, 18 NY3d 374, 379 [2011], rearg denied 19 NY3d 856 [2012]; see Cox v McCormick Farms, Inc., 144 AD3d 1533, 1533-1534 [4th Dept 2016]). In seeking summary judgment, a defendant landowner has the initial burden of establishing its entitlement to judgment as a matter of law by demonstrating that it did not create or have actual or constructive notice of a dangerous condition on the premises (see Parslow v Leake, 117 AD3d 55, 63 [4th Dept 2014]).
We conclude that the Kwik Fill defendants met their burden. It is undisputed that the Kwik Fill defendants hired an outside vendor that regularly inspected and serviced their fuel pumps, and, in support of their motion, the Kwik Fill defendants submitted evidence establishing that the vendor determined that the fuel pumps were working properly before and after the accident, thus establishing that the Kwik Fill defendants maintained their property in a reasonably safe condition (see Ensher v Charlton, 64 AD3d 1032, 1033 [3d Dept 2009]; Lezama v 34-15 Parsons Blvd, LLC, 16 AD3d 560, 560-561 [2d Dept 2005]; Hunter v Riverview Towers, 5 AD3d 249, 249-250 [1st Dept 2004]). Furthermore, the Kwik Fill defendants submitted documents, including the Coach defendants' internal correspondence, establishing that J4500 model buses were involved in similar diesel fuel-spraying accidents at other gas stations. As noted above, the Coach defendants conducted an investigation and concluded that the cause of those accidents was improper fuel tank venting resulting in the build-up of pressure. Thus, the evidence demonstrates that any dangerous condition was one that existed in the J4500 model bus manufactured by the Coach defendants and owned by plaintiff's employer, not one that existed on the Kwik Fill defendants' property. In opposition, plaintiffs and the Coach defendants failed to raise an issue of fact (see generally Zuckerman, 49 NY2d at 562).
Our dissenting colleague does not dispute that the Kwik Fill defendants' premises were maintained in a reasonably safe condition, and acknowledges that a dangerous condition existed only because plaintiff brought a defective product, i.e., the J4500 model bus, onto the premises. We decline to extend the doctrine of premises liability to encompass such circumstances.
All concur except Dejoseph, J., who dissents in part and votes to modify in accordance with the following memorandum: I respectfully dissent in part inasmuch as I agree with Supreme Court that defendants Kwik Fill, United Refining Company, and United Refining Company, doing business as Kwik Fill (collectively, Kwik Fill defendants) were not entitled to summary judgment dismissing the complaint against them. I would therefore modify the order by granting the motion of defendant Husky Corporation and dismissing the complaint against it, and otherwise affirm.
"It is beyond dispute that landowners and business proprietors have a duty to maintain their properties in reasonably safe condition" (Di Ponzio v Riordan, 89 NY2d 578, 582 [1997]). In order for a property owner to be liable in tort to a plaintiff who is injured as a result of an allegedly dangerous condition upon the property, it must be established that a dangerous condition existed and that the property owner affirmatively created the condition or had actual or constructive notice of its existence (see Hanley v Affronti, 278 AD2d 868, 869 [4th Dept 2000]). " Liability for a dangerous condition on property is predicated upon occupancy, ownership, control or a special use of [the] premises . . . The existence of one or more of these elements is sufficient to give rise to a duty of care. Where none is present, a party cannot be held liable for injury caused by the defective or dangerous condition of the property' " (Clifford v Woodlawn Volunteer Fire Co., Inc., 31 AD3d 1102, 1103 [4th Dept 2006]). "[W]hether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury" (Trincere v County of Suffolk, 90 NY2d 976, 977 [1997] [internal quotation marks omitted]; see Hayes v Texas Roadhouse Holdings, LLC, 100 AD3d 1532, 1533 [4th Dept 2012]). To establish the notice element of a negligence claim, plaintiffs were required to demonstrate that defendants had notice of the conditions that were alleged to be dangerous, but plaintiffs were not required to demonstrate that defendants knew that those conditions were dangerous (see Harris v Seager, 93 AD3d 1308, 1309 [4th Dept 2012]).
Here, I conclude that the Kwik Fill defendants failed to meet their initial burden of establishing their entitlement to judgment as a matter of law. Plaintiffs' theory of liability with respect to Kwik Fill is that when the buses operated by plaintiff's employer and manufactured by [*4]defendants Motor Coach Industries, Inc., Motor Coach Industries International, Inc., and Motor Coach Industries, Ltd. (collectively, Coach defendants), came onto the Kwik Fill defendants' premises to refuel, a dangerous condition was created, i.e., inadvertent spillage or spraying of diesel fuel.
Although the Kwik Fill defendants did not create any dangerous condition on their property, the record is clear that they were aware of prior incidents involving buses owned by plaintiff's employer in which spilling or spraying of diesel fuel occurred at one of the Kwik Fill defendants' pumps. Specifically, an employee of the Kwik Fill defendants, i.e., the assistant manager of the gas station where the incident occurred, was aware of three prior incidents involving buses owned by plaintiff's employer and the leaking, spilling, or spraying of diesel fuel. The assistant manager testified at his deposition that he spoke to his manager about this issue. He also stated in his affidavit that "[t]he only vehicles that seem to have trouble fueling with the diesel pumps . . . appear to be the . . . limousine buses [owned by plaintiff's employer]. While I was employed with [the Kwik Fill defendants], I did not witness any similar incidents or problems occur with any other vehicle." Despite this actual knowledge of a dangerous condition, i.e., that the combination of buses owned by plaintiff's employer and the Kwik Fill defendants' diesel fuel pumps was causing fuel spills, the Kwik Fill defendants did not act to remedy the situation. Stated differently, the Kwik Fill defendants did not prohibit buses owned by plaintiff's employer from refueling, and they did not contact plaintiff's employer to discuss the situation or warn it of the possible hazard.
The fact that there is no evidence of a mechanical defect with the Kwik Fill defendants' pumps is irrelevant. Nor does the premises liability cause of action fail on the ground that the Kwik Fill defendants did not have actual or constructive knowledge of the alleged defect in the fuel ventilation system of the buses manufactured by the Coach defendants. The premises liability cause of action here is narrow and limited to one set of circumstances: when buses owned by plaintiff's employer come onto the Kwik Fill defendants' property, a dangerous condition is created; although the Kwik Fill defendants did not create the condition, they were aware of the resulting issue of the spilling or spraying of diesel fuel, and the Kwik Fill defendants did nothing about it. Under these circumstances, I conclude that the Kwik Fill defendants failed to eliminate all questions of fact with respect to plaintiffs' premises liability cause of action.
Entered: July 31, 2019
Mark W. Bennett
Clerk of the Court